835 F.Supp. 1114 (1993)
Milton GRIFFIN-EL, Plaintiff,
v.
MCI TELECOMMUNICATIONS CORP., et al., Defendants.
No. 91-1075C(6).
United States District Court, E.D. Missouri, E.D.
September 27, 1993.
*1115 *1116 Tod J. O'Donoghue, Gallop and Johnson, St. Louis, MO, for Milton Griffin.
Harry W. Wellford, Jr., Charles M. Poplstein, Thompson and Mitchell, St. Louis, MO, for MCI Telecommunications Corp., Midwest Div., MCI Telecommunications Corp., Southern Div., of Missouri.
Brian E. McGovern, McCarthy and Leonard, Chesterfield, MO, for Dick Moore, Director, Paul K. Delo, Superintendent, Donald Roper, Asst. Superintendent, Ray Pogue, Functional Unit Manager, Linda D. Wilkson, Caseworker, Donald L. Gerling, Asst. Director of Div. of Admin., Dept. of Corrections.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on various pretrial motions including cross motions for summary judgment filed by all parties. The Honorable Catherine D. Perry, United States Magistrate Judge, to whom all pretrial matters in this case were referred pursuant to 28 U.S.C. § 636(b), also has submitted her Report and Recommendation to this Court. Upon thorough consideration of the pending motions, the Magistrate Judge's Report and Recommendation and plaintiff's objections thereto, the Court now adopts the Report and Recommendation and enters rulings on the pending motions.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
PERRY, United States Magistrate Judge.
This matter is before the Court on various pretrial motions, including motions for summary judgment filed by both groups of defendants and by plaintiff. All pretrial matters in this case were referred to the undersigned pursuant to 28 U.S.C. § 636(b).

Procedural Background
Plaintiff originally filed, and once amended, this action under 42 U.S.C. § 1983 pro se. Counsel was later appointed and counsel filed a second amended complaint. While motions to dismiss and for summary judgment directed to that complaint were pending, appointed counsel moved to withdraw and substitute counsel was appointed. That substitute counsel later filed a third amended complaint, which is the currently pending relevant complaint, and responded to the then pending motions for summary judgment (the Court had previously notified plaintiff that the pending motion to dismiss would be converted to a motion for summary judgment). After reviewing the various briefs, the undersigned notified the parties that additional briefs on specific issues were required, and invited the defendants to withdraw their previous motions and file new motions for summary judgment. Although neither set of defendants withdrew their pending motions, they both filed new motions for summary judgment, which, in part, incorporated the arguments and exhibits from the first motions. For administrative ease, and because an amended complaint was filed after the pendency of the initial motions, the original motions to dismiss and for summary judgment should be denied as moot, and this Report and Recommendation will address the more recently filed motions for summary judgment directed to the third amended complaint.
Additionally, this case was consolidated for trial with several other similar cases. All discovery in all the consolidated cases has been stayed pending resolution of the summary judgment motions presented in this case, and orders in those cases are being entered simultaneously with this Report and Recommendation, so that the issues in those cases may be resolved in the near future. Counsel has not been, and will not be, appointed in the other consolidated cases.

*1117 The Third Amended Complaint

The third amended complaint seeks declaratory judgment and damages under 42 U.S.C. § 1983. Plaintiff alleges in this complaint that defendants MCI Telecommunications Corporation ("MCI"), Dick Moore (Director of the Missouri Department of Corrections), Donald Gerling (Assistant Director of Division of Administration of the Missouri Department of Corrections), Paul Delo (Superintendent at the Potosi Correctional Center ("PCC")), Donald Roper (Assistant Superintendent of Program Services at PCC), and Ray Pogue (PCC Functional Unit Manager) all violated plaintiff's constitutional rights. MCI provides inmate telephone services to the Missouri Department of Corrections ("MDOC") pursuant to a contract.
Plaintiff alleges in Count I of his third amended complaint that the contract requires MCI to deposit a 25% commission into the "Missouri Department of Corrections and Human Resources Inmate Canteen Fund." Plaintiff alleges that the commissions have been deposited into the General Revenue Fund for the State of Missouri. Plaintiff alleges that, as a result, he personally has been deprived of inmate services that could have been purchased with the PCC canteen fund resources had the PCC canteen fund been receiving these commissions.
In Count II plaintiff alleges that MCI and "the remaining defendants" have violated plaintiff's rights by entering into a contract that requires MCI operators to announce to those persons whom plaintiff attempts to call collect that plaintiff's call is from a correctional institution. Plaintiff alleges that this "branding" has hurt plaintiff's relationship with his family.
Defendants have moved for summary judgment. They contend that plaintiff has failed to establish that he had any constitutional right that has been violated. They further contend that even if plaintiff had some amorphous right that has been impinged, their actions in impinging on this right were reasonably penologically necessary. Finally, defendants argue that they are entitled to qualified immunity on the damages aspect of plaintiff's suit. Plaintiff has responded with his own motion for summary judgment.

Facts:
The following facts appear as record from the affidavits and exhibits provided by the parties, and are undisputed.
On February 28, 1989, the Missouri Department of Corrections ("MDOC") invited various contractors to bid for a contract covering inmate pay phone services. (See Plaintiff's Exh. 2.) MDOC sought a contractor who would provide, install and maintain coinless pay telephones for inmate use at fourteen MDOC institutions. MDOC further required in this invitation for bid ("IFB") that the contractor provide only "operator-assisted" collect services. (Gerling Declaration, ¶¶ 4 and 5.) MDOC further required that the operator each time identify the caller as a collect caller from a correctional institution. (Id. at ¶ 6.)
Several vendors responded to the IFB, including MCI, who first responded on May 23, 1989. (See Plaintiff's Exh. 3.) In July of 1989 MCI was awarded the contract. (Gerling Declaration, ¶ 7.) The contract consists of the IFB, any amendments to the IFB, the contractor's proposal submitted in response to the IFB and any written clarifications of the contractual relationship made with the concurrence of the contractor and the MDOC. (Plaintiff's Exh. 2 at ¶ 7.1.)
As of July of 1989, and until July 30, 1992, the contract provided that the 25% monthly commission check at issue was to be paid "to the Missouri Department of Corrections and Human Resources Inmate Canteen Fund." MCI currently makes the check out "to the Missouri Department of Corrections" pursuant to addendum # 4 to the contract dated June 2, 1992. (See Plaintiff's Exh. 2, Contract at ¶ 2.9 and Declaration of Kathleen Anne Ludecke, Senior National Account Executive for MCI, at ¶ 4.) MCI originally made the check out to "Missouri Department of Corrections and Human" or to "Mo. Dept. of Corrections/Div. of Administration." (Ludecke Declaration at ¶ 4.) MCI does not control, and has never controlled, the dispersal or administration of these funds once the check is sent to the Missouri Department of *1118 Corrections. (See Ludecke Declaration at ¶ 4.)
Under the MDOC/MCI contract MCI provides operator assisted calls only. MCI does not provide direct dial service. Prisoners, thus, are forced to make their outside calls collect, through an operator. This operator announces the origin of all prisoner calls to those who answer the phone. (Ludecke Declaration at ¶¶ 5, 6.) The MDOC contract requires MCI operators to announce "that the call is coming from an inmate at a correctional institution to prevent inmates from making harassing telephone calls and to curb fraudulent billing. This policy was implemented ... in response to numerous complaints from the public about harassing telephone calls and fraudulent billing involving inmates." (Lombardi Affidavit at ¶ 5.)

Discussion
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
The Supreme Court has noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).
In order to state a claim for relief under 42 U.S.C. § 1983 an individual must allege that some person, acting under color of state law, deprived that individual of rights guaranteed under the United States Constitution or the laws of the United States. See Roudybush v. Zabel, 813 F.2d 173, 176 (8th Cir.1987). MCI argues that it is not a state actor as that term is defined under § 1983. The Supreme Court has provided a two-part test for evaluating § 1983 suits where "state action" is called into question.
First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be so because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.
Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982) (citations omitted).
MCI is not entitled to summary judgment on this basis. By entering into a contract to provide telephone services for prisoners *1119 in the state prisons MCI became a state actor as that term is defined by Lugar. With respect to plaintiff's first count regarding commissions, MCI was a "state actor" because MCI and the State of Missouri had a symbiotic relationship. See Burton v. Wilmington Parking Auth., 365 U.S. 715, 723-24, 81 S.Ct. 856, 860-61, 6 L.Ed.2d 45 (1961). The focal inquiry under the symbiosis test is whether the state so "insinuated itself into a position of interdependence ... that it must be recognized as a joint participant in the challenged activity." Id. Here the state dictated the terms of the contract and then fiscally profitted from the commissions. One of the key factors under the symbiosis test is whether the state and the party claiming not to be a state actor shared in any profits. See Atkinson v. B.C.C. Associates, Inc., 829 F.Supp. 637, 645 (S.D.N.Y.1993). MCI was a state actor under the symbiosis test with respect to Count I.
MCI is also a state actor under Count II, but the undersigned reaches this conclusion through the "close nexus" and "state compulsion" state action tests. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) ("... the inquiry must be whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself"); Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-71, 90 S.Ct. 1598, 1614-15, 26 L.Ed.2d 142 (1970) (a § 1983 plaintiff satisfies the state action component if she demonstrates that a private party acted wrongly because of a state enforced custom, i.e., state law compelled the act). In the case at hand the MDOC mandated that the prisoners be "branded." This is not a case where the telephone services vendor initiated the branding practice on its own. MCI had no choice under the contract. Plaintiff's cause of action therefore sufficiently establishes the nexis or compulsion necessary to establish state action under Count II. Cf. Allen v. American Telephone & Telegraph Co., Nos. 89 Civ 5087, 89 Civ 6399 (KTD), 1990 WL 515050 at *2, 1990 U.S.Dist. LEXIS 8756 at *5 (S.D.N.Y., July 16, 1990) (no state action in § 1983 case because AT & T, on its own initiative, branded inmates "well before any request" by corrections officials); Hill v. American Telephone & Telegraph Co., No. 90CV10019-BC, 1991 WL 537192 at *1-2, 1991 U.S.Dist. LEXIS 2332 at *2-3 (E.D.Mich., Report and Recommendation, January 30, 1991) (same).

Count I
In plaintiff's first count he seeks to hold all defendants liable because commissions paid by MCI, under a contract with the Missouri Department of Corrections, are allegedly improperly paid into the "General Revenue Fund" for the State of Missouri rather than into the "Missouri Department of Corrections and Human Resources Inmate Canteen Fund" (hereinafter "MDOC Inmate Canteen Fund"). Plaintiff argues that he personally has been damaged because the MCI monies have never been forwarded to the MDOC Inmate Canteen Fund.[1] The record before the Court reflects, as set forth in the "Facts" section above, that MCI never made its payments to MDOC Inmate Canteen Fund, but the record does not reflect what the state did with the funds once it received them.[2] For purposes of the motion then, the Court will assume, without deciding, that plaintiff is correct in asserting that the MDOC deposits these commissions into its general revenue funds.
*1120 The first issue under this count, then, is whether any money is currently required to be paid into the MDOC Inmate Canteen Fund under the contract. The answer is definitely no. The contract has not required such a payment since July 30, 1992. The next issue is whether MCI was ever required to make the 25% commission check to the MDOC Inmate Canteen Fund. The answer to this question is most definitely yes, as it was explicitly required by the contract from July of 1989 to July 30, 1992. It is also clear that MCI did not make out the checks in this manner. As discussed above, the Court will assume that after MCI gave the checks to the MDOC, MDOC deposited them to its general revenue fund rather than to the MDOC Inmate Canteen Fund. The remaining question, then, is what impact this has on plaintiff.
Plaintiff's argument is that because § 217.195, R.S.Mo. (1986) creates, in explicit and mandatory language, an Inmate Canteen Fund at each correctional facility in Missouri he had a "liberty interest" in MCI's directly depositing its commissions check into the MDOC Inmate Canteen Fund. Plaintiff misses a critical step in the analytical process.
While § 217.195 may create a property interest (as opposed to a "liberty interest") in plaintiff's having a canteen fund at his place of incarceration, § 217.195 says nothing about MCI commissions.[3] Indeed, there is no Missouri statute or regulation of which the undersigned is aware which required MCI to place any money in any Inmate Canteen Fund. Plaintiff thus must argue that the MDOC/MCI contract somehow created a constitutionally protected property interest, prosecutable by plaintiff, in MCI's placing money in the MDOC Inmate Canteen Fund, and in some of that money finding its way to the PCC canteen fund, between 1989 and 1992.
In Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the Supreme Court provided the analysis required in a case where a prisoner asserts that he has been deprived of a liberty or property interest:
We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. The types of interests that constitute "liberty" and "property" for fourteenth amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire" and must be based on more than "a unilateral hope." Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.
Id., 490 U.S. at 460, 109 S.Ct. at 1908 (citations omitted).
Certainly, prior to the MDOC/MCI contract, plaintiff had no property interest in MCI's putting any money in any canteen fund. After the contract became effective, plaintiff had little more than a hope that some portion of the commissions check would end up in the PCC canteen fund. No party has explained to the Court how, or whether, the single commissions check which was supposed to have been made out to the MDOC Inmate Canteen Fund was supposed to be divided among the various prisons in Missouri. It is certainly possible that the PCC canteen fund could have received no portion of the commissions check. Moreover, any "hope" plaintiff had was quashed when MCI made its check out to the various "Missouri Department of Corrections" entities noted previously, rather than the MDOC Inmate Canteen Fund. Plaintiff, accordingly, never had any "legitimate claim of entitlement" to any portion of the MCI check ending up in *1121 the MDOC Inmate Canteen Fund, and certainly had no entitlement to the funds ending up in the PCC canteen fund.
The undersigned reaches this conclusion with the guidance of several analogous cases. In Walentas v. Lipper, 862 F.2d 414 (2d Cir.1988), cert. denied, 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989), the Second Circuit was called upon to evaluate whether an individual had satisfactorily pleaded that he had a property interest in becoming a "designated developer" of certain New York city property located between the Brooklyn and Manhattan bridges. The Walentas court held that the individual did not have a constitutionally protected property interest because he lacked the "concreteness of entitlement required by Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and its progeny." In reaching this conclusion the Second Circuit reiterated its reluctance to "further constitutionalize contractual interests." Walentas, 862 F.2d at 418, quoting S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966-67 (2d Cir.1988). In order to establish the sort of "concreteness of entitlement" contemplated under Roth and its progeny one must establish "either a certainty or a very strong likelihood" that one would have obtained the goal sought but for the denial of due process.[4]Walentas, 862 F.2d at 419, quoting Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir.1985). Here, plaintiff argues that he had an entitlement to MCI's putting money in a non-existant account (the "Missouri Department of Corrections and Human Resources Inmate Canteen Fund") the proceeds of which may or may not have ended up in the PCC canteen fund. This is not a "concrete entitlement." Plaintiff had no legitimate expectation that the PCC canteen fund would ever receive a penny pursuant to the MCI contract. Plaintiff therefore never had a constitutionally protected property interest created by the MCI contract. See also Hill v. Group Three Housing Development Corp., 799 F.2d 385, 391 (8th Cir.1986) (applicants for housing assistance payments under 42 U.S.C. § 1437f were eligible for benefits, but eligibility did not mean entitlement to benefits); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir.1989) (in order for prisoners to demonstrate a constitutionally protected property interest they had to demonstrate a mutually explicit understanding between themselves and the prison officials). Defendants' motion for summary judgment should therefore be granted on Count I.[5]
Plaintiff has further argued that his § 1983 cause of action should survive because he is an intended third party beneficiary of the MCI/MDOC contract. If this is true then plaintiff has a contract cause of action in state court. Thus, even if plaintiff somehow has a property interest because he is a third party beneficiary in the MCI/MDOC contract, defendants' motions for summary judgment should be granted because plaintiff has an adequate procedural mechanism available to prosecute his claim. See Thompson, 109 S.Ct. at 1908. See also Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (the deprivation by state action of a constitutionally protected liberty or property interest is not in and of itself actionable unless the deprivation is without due process of law). As the Seventh Circuit has noted, "the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." Brown v. Brienen, 722 F.2d 360, 364 (7th Cir.1983). All the defendants are, accordingly, entitled to summary judgment on Count I.

*1122 Count II

In plaintiff's second count he challenges the fact that "defendant MCI's contract ... mandated the operator's identification of the call as a collect call from a correctional institution." Plaintiff alleges that as a result of MCI's identifying him as a prisoner to persons he calls collect ("branding"), some of his family members have limited their contact with him.
First, plaintiff has failed to establish that he has any constitutional right that has been impinged by this "branding" practice. While plaintiff may have a limited right to certain aspects of his privacy in prison, the fact of his incarceration is a matter of public record. See Lamb v. Corum, No. 88-0586-CV-W-5-P, 1988 WL 410489, 1988 U.S.Dist. LEXIS 6781 (W.D.Mo., July 6, 1988).
The constitutional right of privacy only protects the most intimate phases of personal life relating to marriage, procreation, contraception, family relationships, child rearing, and education. Paul v. Davis, 424 U.S. 693, 712, 713 [96 S.Ct. 1155, 1165, 1166, 47 L.Ed.2d 405] (1976); Borucki v. Ryan, 827 F.2d 836, 839 (1st Cir.1987). Information regarding being charged with a crime and held as a pretrial detainee are matters of public record. Cf. McNally v. Pulitzer Publishing Co., 532 F.2d 69 (8th Cir.1976), [cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976) ]. Plaintiff has not suffered a violation of his intimate personal life because the information that he is being held for a crime is a matter of public record.
Lamb, 1988 WL 410489, 1988 U.S.Dist. LEXIS 6781 at *3-4. See also Allen, 1990 U.S.Dist. LEXIS 8756 at *5-6 (branding practice of AT & T operators identifying prisoners implicated no constitutional privacy interest). Furthermore, the Federal Communications Act of 1934 permits
a person transmitting an interstate or foreign wire communication to divulge its existence to the addressee. 47 U.S.C. § 605. Telling the addressee of a collect call who is placing the call, and the origin of the call is consistent with that provision. Moreover, since the addressee is one who will incur an expense if he or she decides to accept the call, common sense mandates such a conclusion.
Hill v. General Telephone Co., No. 1:89CV785, 1991 WL 538377 at *3, 1991 U.S.Dist. LEXIS 7892 at *6-7 (W.D.Mich., May 28, 1991). Defendants' motion for summary judgment on Count II could be granted on this basis alone.
Assuming, arguendo, that plaintiff has a constitutional right that is being impinged by the "branding" policy, it must be a privacy right. While each prisoner's limited right to privacy must yield to the penal institution's need to maintain security, it does not diminish altogether. See Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); Hudson v. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991); Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir.1982). "An equally important precept, however, is that a prisoner's rights may be limited or constrained in significant ways, in order to further the penal system's legitimate objectives." Timm, 917 F.2d at 1099, citing Hudson, 468 U.S. at 524, 104 S.Ct. at 3199. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89, 107 S.Ct. at 2261.
Four factors are relevant in assessing the reasonableness of the impinging regulation or practice. "First, there must be a `valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Id., quoting Block v. Rutherford, 468 U.S. 576, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984). The second inquiry is "whether there are alternative means of exercising the [asserted constitutional] right that remain open to prison inmates." Id. 482 U.S. at 90, 107 S.Ct. at 2262. In conducting this second inquiry "courts should be particularly conscious of the `measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.'" Id., quoting Pell v. *1123 Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). The third consideration is the impact that any court-imposed "accommodation of the asserted constitutional right [would] have on guards and other inmates, and the allocation of prison resources generally." Id. The final relevant factor is whether the "inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." Id. 482 U.S. at 91, 107 S.Ct. at 2262.
The MDOC contract requires MCI operators to announce "that the call is coming from an inmate at a correctional institution to prevent inmates from making harassing telephone calls and to curb fraudulent billing. This policy was implemented ... in response to numerous complaints from the public about harassing telephone calls and fraudulent billing involving inmates." (Lombardi Affidavit at ¶ 5.) There is, accordingly, a valid, rational connection between the "branding" policies and the legitimate governmental interest of protecting citizens from harassing or fraudulent calls by inmates.
Given the rational connection, we turn to Turner's next three inquiries. The second inquiry under Turner is whether there is an "alternative means of exercising" plaintiff's putative privacy right. Plaintiff asserts that operators could simply identify callers by name rather than by stating that they are inmates. While this alternative protects plaintiff's asserted privacy right not to be identified as a prisoner, it does not satisfy the Missouri Department of Corrections' goal of alerting the unwary that a prisoner is calling them before they start paying for the collect call. Because this second inquiry under Turner must be conducted with a measure of judicial deference towards the decisions of correctional officials it, too, weighs against plaintiff. The third inquiry requires an analysis of prison resources. While at first glance it would appear that plaintiff's alternative would have little or no impact on prison officials, were prisoners able to make collect phone calls only for the purpose of harassment or to perpetuate a fraud, it is apparent that prison resources would have to be redistributed to respond to those problems. Prison resources therefore would be at risk under plaintiff's alternative. For all the above reasons, the fourth inquiry likewise weighs against plaintiff. The undersigned therefore finds that the "branding" practice is not unreasonable. Defendants' motion for summary judgment should therefore be granted on Count II even if plaintiff has a privacy right impinged by the practice.

Qualified Immunity
Defendants have also sought qualified immunity from the damages portion of plaintiff's suit. The Eighth Circuit recently discussed the qualified immunity doctrine in Brown v. Frey, 889 F.2d 159 (8th Cir.1989), cert. denied, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990), stating:
Under § 1983, a prisoner may sue a state official in his individual capacity when acting under color of state law if he deprives the prisoner of rights guaranteed by the Constitution or federal laws. However, prison officials are immune from suit on the basis of qualified good faith immunity unless (1) their conduct violated a constitutional right of the plaintiff-prisoner that was clearly established prior to the time of the alleged acts of the prison officials; (2) they knew or should have known of the clearly established right at the time of the violation; and (3) they knew or should have known that their conduct violated that right. Cleavinger v. Saxner, 474 U.S. 193, 207 [106 S.Ct. 496, 503, 88 L.Ed.2d 507] (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982); Procunier v. Navarette, 434 U.S. 555, 562-63 [98 S.Ct. 855, 859-60, 55 L.Ed.2d 24] (1978).
889 F.2d at 164-65.
Plaintiff has not established that he had a clearly established right not to be "branded." Indeed, as discussed above, the case law uniformly has upheld this type of disclosure to persons being telephoned from prisons, and plaintiff has not cited one case where the "branding" practice has been found unconstitutional. Defendants are accordingly entitled to qualified immunity on plaintiff's second count. Defendants, likewise, are entitled to qualified immunity on *1124 plaintiff's first count. Petitioner had and has no clearly established property right under the MCI/MDOC contract, so defendants certainly could not have reasonably believed they were infringing on a clearly established, constitutionally protected property right. Nevertheless, assuming, arguendo, that plaintiff is a third party beneficiary under the contract, plaintiff has not established that alternative legal processes available to him in state court are not adequate. Defendants are therefore entitled to qualified immunity on both counts.[6]
Accordingly,
IT IS HEREBY RECOMMENDED that defendants motions for summary judgment [# 37 and # 38] be granted, and that judgment be entered in favor of all defendants on plaintiff's complaint.
IT IS FURTHER RECOMMENDED that plaintiff's motion for summary judgment [# 36] be denied.
IT IS FURTHER RECOMMENDED that defendant MCI's motion to dismiss [# 4] and the state defendants' motion for summary judgment [# 3] be denied as moot.
The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).
Dated this 2nd day of September, 1993.
NOTES
[1] Plaintiff argues that had the PCC canteen fund received a portion of the commissions check which was supposed to have been made out to the "Missouri Department of Corrections and Human Resources Inmate Canteen Fund" the PCC canteen fund would, obviously, have had more money at its disposal from which religious items could have been purchased. Plaintiff further alleges that he is a member of the Moorish Science Temple at PCC and Moorish Science Temple requests for religious items have been denied "at least in part, because the [PCC] Inmate Canteen Fund had insufficient monies available." Plaintiff thus asks the Court to assume that, were more money available in the PCC canteen fund, plaintiff's religious organization would have received more money in religious items or services. (See Plaintiff's Exh. 2.)
[2] It is also not clear that an "MDOC Inmate Canteen Fund" even exists. Inmate canteen funds exist at each institution, but no party has provided any evidence that such a fund exists at the MDOC level.
[3] Plaintiff argues in the alternative, that MCI has somehow violated § 217.195 (R.S.Mo.1986) by permitting the reversion or transfer of canteen funds to the general revenue. MCI has always made the commissions check payable to the "Missouri Department of Corrections," "the Missouri Department of Corrections and Human" or to the "Missouri Department of Corrections/Division of Administration" and no state actor has challenged this practice. What happened to the money after MCI made out the check was of no concern to MCI. Plaintiff's theory that MCI should be held liable for an omission by the MDOC defendants should not survive summary judgment.
[4] In Roth the court stated that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709.
[5] The undersigned notes that the crucial question asked by courts considering whether prisoners have identified constitutionally protected liberty or property interests is whether some state statute or regulation contains such "explicitly mandatory language" that the state decision maker's discretion has been severely limited. See, e.g., Doe v. Sullivan County, 956 F.2d 545, 557 (6th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992). In the case at hand the MDOC has retained the ability to cancel the MCI/MDOC contract at any time upon material breach by MCI. There is no reciprocal provision for MCI, and plaintiff, certainly, has no say in whether or when the MDOC could cancel its contract. (See Contract at ¶ 6.5.)
[6] MCI, alternatively, presents a private party qualified immunity argument, relying on DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 721 (10th Cir.1988). MCI's reliance on DeVargas is misplaced in that MCI did not comply with the terms of its contract between July of 1989 and July 30, 1992. MCI, as a state actor, can nevertheless find solace in qualified immunity as discussed above.