Pennsylvania Environmental Defense : 
Foundation, :
                 Petitioner :
                  :
        v. : No. 447 M.D. 2021
                  : Argued: September 12, 2022
Commonwealth of Pennsylvania; The :
Pennsylvania House of :
Representatives and Bryan Dean :
Cutler, in his official capacity as its :
Speaker; The Pennsylvania Senate :
and Jake Corman, in his official :
capacity as the Senate President :
Pro Tempore; and Tom Wolf, :
in his official capacity as Governor :
of Pennsylvania, :
                Respondents :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT            FILED: November 8, 2022

       Before the Court are the preliminary objections of the Commonwealth of Pennsylvania, the Governor of Pennsylvania, Tom Wolf, the Pennsylvania House of Representatives and the Pennsylvania Senate (General Assembly), and House Speaker Bryan Cutler and Senate President Pro Tempore Jake Corman (Legislative Leadership) (collectively, Respondents) that were filed in response to the petition for review of the Pennsylvania Environmental Defense Foundation (Foundation). The petition for review seeks a declaratory judgment that the Snowmobile and All-

Terrain Vehicle Law[1] and Section 1720-E(a) and (b) of The Fiscal Code[2] violate the Environmental Rights Amendment of the Pennsylvania Constitution. PA. CONST. art. I, §27.[3] Respondents, in separate responsive pleadings, assert, *inter alia*, that the petition fails to state a claim upon which relief can be granted. We sustain the demurrers.

### Petition for Review

The Foundation is a non-profit organization incorporated under the laws of Pennsylvania for the purpose of protecting and preserving the environmental interests of its members in Pennsylvania. Members of the Foundation have filed affidavits in support of the petition for review.

The petition for review identified the named Respondents as trustees of a trust established by the Environmental Rights Amendment to the Pennsylvania Constitution. State forests and state parks constitute the corpus of this trust. The state forest in northcentral Pennsylvania, approximately 1.4 million acres, is "one of the most extensive intact forest ecosystems in the eastern United States."[4] Petition for Review (Petition) at 27, ¶61.

In 1971, the General Assembly enacted the Snowmobile Law[5] to require snowmobiles to be titled and registered and to authorize registered

---

[1] 75 Pa. C.S. §§7701-7753.

[2] Act of April 9, 1929, P.L. 343, *as amended*, added by the Act of July 17, 2007, P.L. 141. Section 1720E-(a) was added by the Act of June 22, 2018, P.L. 281, and Section 1720E-(b) was added by the Act of November 23, 2020, P.L. 114, 72 P.S. §1720-E(a), and (b).

[3] The text of the Environmental Rights Amendment is set forth in the opinion, *infra*.

[4] According to the Department of Conservation and Natural Resources, the state forest system comprises 2.2 million acres of forestland in 50 of Pennsylvania's 67 counties. *See* PENNSYLVANIA DEPARTMENT OF CONSERVATION & NATURAL RESOURCES, PENNSYLVANIA STATE FOREST DISTRICTS, https://www.dcnr.pa.gov/StateForests/Pages/default (last visited November 7, 2022).

[5] Act of August 12, 1971, P.L. 299, No. 75 (Act 75). The Act of June 17, 1976, P.L. 162, No. 81 (Act 81) repealed Act 75 and reenacted the Snowmobile Law, codifying it in Title 75 of the Vehicle

snowmobiles to use trails in state forests developed for that purpose. In 1985, the Snowmobile and All-Terrain Vehicle Law, 75 Pa. C.S. §§7701-7753, added all-terrain vehicles (ATVs) to the titling and registration regime and authorized their use on designated trails in state forests and state parks. Some ATV trails were placed on the preexisting illegal trails. Petition at 8, ¶20.

In 1995, the Department of Environmental Resources was reorganized into two agencies. The General Assembly created the Department of Conservation and Natural Resources (Department or DCNR) to conserve state forests and state parks and manage their use. In that regard, the Department is required to deposit all revenue generated by the ATV program into restricted accounts and to use those accounts for such ATV-related purposes as "registration and certificate of title activities, training, education, enforcement activities, construction and maintenance of snowmobile and ATV trails and acquisition of equipment, supplies and interests in land[.]" Petition at 7, ¶17 (quoting 75 Pa. C.S. §7706(a)(2)).

On March 16, 2000, in response to the increased demand for more ATV trails, the Secretary of Conservation and Natural Resources directed the development of a five-year plan for their use in state forests. Petition at 9, ¶22. The Department's survey found that approximately 222 miles of ATV trails had been approved for use in state forests, but over 2,500 miles of illegal trails had been created by ATV users. Petition at 10, ¶24. In response, the Department adopted enforcement policies in 2001 and 2003 to restrain ATV use in state forests. Under pressure, however, the Department agreed to consider "strategic connector" trails in state forests "in part to support local economic interest." Petition at 10, 12, ¶¶25-26, 29. By 2015, the authorized ATV trails in the state forest had increased to 265 miles.

Code, 75 Pa. C.S. §§7701-7753. Act 81 was amended by the Act of July 11, 1985, P.L. 225, to include all-terrain vehicles (ATVs).

The Department's 2015 policy reiterated that except for "limited development of connectors, as deemed appropriate by the Department[,]" the ATV trail system should not be further expanded. Petition at 13, ¶33. That policy also stated that the Department "does not consider state forest roads to be an option for connectors between trails systems" due to visitor safety concerns. Petition at 14, ¶34 (emphasis in original omitted).

One connector considered was a new ATV trail through the Sproul State Forest District to connect the existing Bloody Skillet ATV Trail in northern Centre County and the Whiskey Springs ATV Trail in western Clinton County. Petition at 14, ¶35. The Department retained the Larson Design Group to evaluate the feasibility of such a connection, but it was "unable to identify a connector ATV route that would not impact on sensitive State Forest resources[.]" Petition at 15, ¶37.

In 2018, shortly before the Larson Design Group completed its study, the General Assembly amended The Fiscal Code to add Section 1720-E(a). It states as follows:

> (a) Appropriations.--The following shall apply to appropriations for the Department of Conservation and Natural Resources:
>
> > (1) The department shall, in consultation with the Department of Transportation, develop, open and maintain an ATV trail connecting the Whiskey Springs ATV trail to the Blood Skillet ATV trail *by utilizing existing State roads and State forest roads* by April 1, 2020.
> >
> > (2) The department shall, in consultation with the Department of Transportation, implement the full Northcentral Pennsylvania ATV initiative and create a network of ATV trails connecting Clinton County to the New York State border *by utilizing existing State roads and State forest roads* by April 1, 2024.

4

72 P.S. §1720-E(a) (emphasis added).

On May 10, 2019, the Secretary of Conservation and Natural Resources advised the Governor that the Department could not meet the April 1, 2020, deadline in Section 1720-E(a) because it lacked the necessary funding and had concerns for "user safety, environmental consequences, user satisfaction and legality, among others." Petition at 17, ¶41. In response, on August 14, 2019, Senator Joe Scarnati, then President Pro Tempore of the Senate, met with an ATV association as well as representatives of the Department and the Department of Transportation (PennDOT). The senator informed them that his office planned to discuss with the Governor why the Department and PennDOT "were not complying with the Governor's directive to change their policies" to implement the law authorizing the use of state roads to connect ATV trails. Petition at 17-18, ¶42.

On November 18, 2020, the Department issued a policy that stated, *inter alia*, that the Department is "working to ensure that registered ATV owners receive sufficient benefits for their registration funds while balancing the protection of our natural resources and the needs of all recreational uses on state lands." Petition at 18, ¶43 (emphasis in original omitted). The policy recognized the growing popularity of ATVs, which impacted "the core functions that state forest lands were acquired to address" including "protection of clean water, clean air, wildlife habitat, scenic beauty, rare and significant ecosystems, and wild plants." *Id*. The policy stated that the Department did not "consider state forest roads to be a viable option for ATV connectors or trail systems mainly because they may not be conducive for ATV riding." *Id*.

On November 23, 2020, the General Assembly amended The Fiscal Code to add Section 1720-E(b), which states, in pertinent part, as follows:

(b) Regional ATV pilot program for department lands.--

5

(1) The department shall establish a regional pilot program for ATV use on department lands.

(2) As part of the pilot program, by December 31, 2020, the department shall:

> (i) evaluate department forest districts, including Elk, Moshannon, Sproul, Susquehannock and Tioga, for roads and trails to serve as potential regional connectors and to provide local access or serve as a trail complex for ATV use; and

> (ii) perform an assessment regarding charging fees for access to the department ATV pilot area.

* * * *

(5) The department shall provide access to the department ATV pilot area for the 2021 summer ATV riding season from the Friday before Memorial Day through the last full weekend in September, in addition to an extended season to be determined by the department based on local conditions.

72 P.S. §1720-E(b)(1)-(2), (5).

To comply with Section 1720-E(b) of The Fiscal Code, the Department developed the 2021 ATV Regional Connector Trail Pilot (2021 ATV Pilot) on 59 miles of ATV trails (45.4 miles of existing trails and 13.6 miles of new trails). The 2021 ATV Pilot "reflects plans for an initial phase of a potential larger project, plans for which will be submitted later. In future years the trail network may be expanded. Any expansions of the system will be covered by subsequent SFERs."[6] Petition at 20, ¶46 (citing Exhibit N) (emphasis in original omitted). In conjunction with the 2021 ATV Pilot, the Department's Bureau of Forestry did an environmental assessment of the impact of the increased ATV use on erosion and sedimentation; water quality; state forest roads; and the risk of fuel spills. Petition at 20-21, ¶48.

---

[6] "SFERs" stands for State Forest Environmental Reviews.

The petition avers that the ATV trails, which are 12 feet wide to allow passing in the opposite direction, "fragment the forest, compact the soil, concentrate water flow causing erosion and sedimentation, and degrade high quality and exceptional value headwater stream." Petition at 27, ¶63. It further avers that ATV use "generates dust and destroys habitats for sensitive species in wetlands and vernal pools[,]" and "[e]ven more extensive impacts result from illegal ATV use of the State Forest beyond designated ATV trails[.]" Petition at 27, ¶¶63-64. Finally, ATVs are "loud with a noise level more akin to heavy industrial equipment[.]" Petition at 28, ¶65. The petition avers that state forest district managers do not have the staff and resources necessary to inventory and remedy the degradation of the state forest by ATV use. Petition at 29, ¶68. The petition avers that the challenged statutes have forced the Department to violate its constitutional duty to "conserve and maintain the public natural resources." Petition at 30, ¶70.

Based on these allegations, the petition for review seeks a judgment that declares

> the following legislative acts and actions taken pursuant to those acts are unconstitutional under the [Environmental Rights Amendment] and that the Respondents violated their constitutional duties as trustees under the [Environmental Rights Amendment] in mandating them:
>
> (a)    The legislatively forced use of ATVs on our State Forest and State Parks by the provisions in the Snowmobile and ATV Law that require DCNR to title and register ATVs within the Commonwealth, authorize the use of ATVs on our State Forest and State Parks, and thus create the expectation among ATV users that DCNR will use the revenue generated by ATV titling and registration activities to provide ATV trails for their use on our State Forest and State Parks.

7

(b) The legislatively forced use of ATVs on our State Forest and State Parks by Section 1720-E(a) of the Fiscal Code enacted in 2018 that requires DCNR to develop, open and maintain new ATV trails in the Sproul State Forest District to connect the existing Whiskey Springs and Bloody Skillet ATV trails, to authorize the use of State Forest roads as part of this new ATV trail system, and to create a network of ATV trails connecting Clinton County to the New York State border.

(c) The legislatively forced use of ATVs on our State Forest and State Parks by Section 1720-E(b) of the Fiscal Code enacted in 2020 that requires DCNR to implement a regional ATV connector trail pilot program during the summer of 2021.

(d) The [2021 ATV Pilot] opened during the summer of 2021 to comply with Section 1720-E(b) of the Fiscal Code that further expands ATV trails on our State Forest and State Parks, thus increasing the use of our State Forest and State Parks by ATVs.

Petition at 41-42, ¶82 (grammatical errors not corrected).

## Preliminary Objections

The General Assembly has filed preliminary objections to the petition for review asserting insufficient specificity to the pleading, untimeliness, and legal insufficiency (demurrer). The Legislative Leadership has filed preliminary objections in the nature of a demurrer. The Governor has filed preliminary objections asserting misjoinder. The Commonwealth has filed preliminary objections asserting untimeliness, a demurrer, and sovereign immunity.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences therefrom. *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014). "The Court, however, is not bound by legal conclusions, unwarranted inferences from facts,

8

argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* We may sustain preliminary objections where the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.*

## I. Misjoinder

We begin with the Governor's preliminary objection asserting misjoinder.[7] The Governor argues that he is not a proper party to this action merely because he signed into law two of the challenged statutes. The Governor contends that "the proper party in interest to a challenged law is the government official that implements the law," which is not the Governor. Governor Brief at 10.

In response, the Foundation argues that the Governor is a proper party because he directed the Department to revoke the moratorium on new ATV trails in state forest lands and the use of state forest roads to connect existing trails. Foundation Brief at 56. The Foundation further contends that the Department "has little choice" when "facing the mandate by the Governor to take an action that degrades our State Forest and State Parks." *Id.* at 57. These claims about the Governor's directives and mandates were not alleged in the petition for review and cannot be considered.

The allegations that are included in the petition for review are oblique and limited as to the Governor. One allegation states that on August 14, 2019,

---

[7] Pennsylvania Rule of Civil Procedure 1028(a)(5) states:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

> \* \* \* \*

> (5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action[.]

PA.R.Civ.P. 1028(a)(5).

9

Senator Joe Scarnati pledged to discuss with the Governor's Office why the Department and PennDOT "*were not complying with the Governor's directive* to change their policies [regarding use of roads for ATVs] as was signed into law." Petition at 17-18, ¶42 (emphasis added). Another allegation states that in 2020, the Department's policy office, described as "an extension of the Governor's Policy Office," rescinded the ATV moratorium. Petition at 18, ¶43. These passing references to the Governor are inadequate to demonstrate his responsibility for legislation on ATV trails in state forests and parks.

The Governor is not a proper party merely because he signed into law The Fiscal Code amendments that are alleged to violate the Environmental Rights Amendment in this declaratory judgment action. *See Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1217 (Pa. Cmwlth. 2018). Further, the merits of the Foundation's constitutional challenge can be decided without the Governor's participation. *Pennsylvania State Education Association v. Department of Education*, 516 A.2d 1308, 1310 (Pa. Cmwlth. 1986) (holding that the Department of Education's involvement in the implementation of the tuition agreement in question was "minimal" and that "meaningful relief can readily be afforded without the inclusion of the Department in the instant matter").

We sustain the Governor's preliminary objection asserting misjoinder under PA.R.Civ.P. 1028(a)(5).

## II. Demurrer

Next, we address the preliminary objection of the remaining Respondents that the petition for review fails to state a claim upon which relief may be granted. The General Assembly, the Commonwealth, and the Legislative Leadership assert that the allegations in the petition for review are inadequate to

10

overcome the presumed constitutionality of the statutes challenged by the Foundation.

The General Assembly argues that on its face the Snowmobile and ATV Law demonstrates a "reasonable legislative attempt to limit and control unauthorized ATV riding and hence limit environmental harm." General Assembly Brief at 29. In 1985, challenges raised under the Environmental Rights Amendment were reviewed under the three-factor test set forth in *Payne v. Kassab*, 312 A.2d 86, 94 (Pa. Cmwlth. 1973), which is (1) whether the respondent complied with the Commonwealth's environmental laws; (2) whether the record showed a reasonable effort to reduce the environmental incursion to a minimum; and (3) whether the environmental harm so clearly outweighed the benefits to be derived so that allowing the action would be an abuse of discretion. *Id.* The General Assembly argues that the Snowmobile and ATV Law should be reviewed under the *Payne* test, which was in effect when the statute was enacted, and not under the test announced in *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911 (Pa. 2017) (*PEDF II*).[8] Even so, the Snowmobile and ATV Law meets the *PEDF II* standard because it reflects a "reasonably balanced legislative effort to channel and control growing and difficult-to-manage ATV traffic." General Assembly Brief at 31. As explained in *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 953 (Pa. 2013), the Environmental Rights Amendment prohibits a government act that "unreasonably causes actual or likely deterioration" of public natural resources. Further, "Section 27 rights belong to all of the People," including those who "choose to enjoy the Commonwealth's natural, scenic, historic, and

---

[8] In *PEDF II*, the Pennsylvania Supreme Court reversed this Court's decision in *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 108 A.3d 140 (Pa. Cmwlth. 2015) (*PEDF I*).

11

esthetic values by way of [an] ATV." General Assembly Brief at 31. The General Assembly has to balance these diverse interests, and it did so in the Snowmobile and ATV Law. The General Assembly does not have to make "specific Section 27 findings before passing its enactments." General Assembly Brief at 27 (citing *Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 701 (Pa. Cmwlth. 2018)).

With respect to the 2018 and 2020 amendments to The Fiscal Code, the General Assembly argues that the 2018 amendment directs the Department to develop ATV trails "*by utilizing existing* State roads and State forest roads;" new trail construction is not required. Section 1720-E(a) of The Fiscal Code, 72 P.S. §1720-E(a) (emphasis added). The 2020 amendment calls for an ATV "pilot program" that is experimental, not permanent, and gives the Department flexibility to address environmental concerns that arise in the course of implementing the pilot program. The 2020 amendment directs the Department to "perform outreach to affected communities and stakeholders," which includes environmental groups, such as the Foundation. 72 P.S. §1720-E(b)(3)(ii). It also requires the Department to collect fees from pilot program users and deposit them into the restricted account to fund "ATV activities, *enforcement and maintenance on department lands*." 72 P.S. §1720-E(b)(8) (emphasis added). Finally, the 2020 amendment directs the Department to "monitor the use, enforcement, maintenance needs and any associated impacts to State Forest land resources" and submit a report to the legislature. 72 P.S. §1720-E(b)(9). In short, the 2018 and 2020 amendments to The Fiscal Code "reasonably account for the environmental features of the affected locale" and, thus, satisfy the Environmental Rights Amendment. General Assembly Brief at 34 (quoting *Murrysville Watch Committee v. Municipality of Murrysville Zoning*

*Hearing Board* (Pa. Cmwlth., No. 579 C.D. 2020, filed January 24, 2022), slip op. at 22 (unreported),[9] *appeal denied*, __ A.3d __ (Pa., No. 56 WAL 2022, filed August 10, 2022) (emphasis added)).

The Commonwealth makes arguments in support of a demurrer that are substantially the same as those of the General Assembly.

In support of its demurrer, the Legislative Leadership notes that the petition for review recites that the 2021 ATV Pilot program is sited entirely on existing roads and trails on state forest lands. Legislative Leadership Brief at 25. Because The Fiscal Code amendments "maximiz[e] the use of existing resources rather than using new ones," they meet the "ordinary prudence" standard by which a trustee's actions are evaluated under the Environmental Rights Amendment. Legislative Leadership Brief at 18. Likewise, the Snowmobile and ATV Law satisfies the constitutional standard of ordinary prudence announced in *PEDF II*.[10] Contrary to the Foundation's assertion, the legislature need not defer to an agency's opinion "on the merits" of proposed legislation. Legislative Leadership Brief at 20. Further, the Environmental Rights Amendment does not prohibit normal and customary outdoor recreational use of a public resource. Indeed, at the time of the adoption of the Environmental Rights Amendment, the settlors of the public trust were aware that some beneficiaries "chose to exercise their rights through the use of mechanical equipment" and, thus, were developing trails for snowmobiles. *Id*. at 29.

---

[9] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

[10] Notably, the Snowmobile and ATV Law was enacted in 1971 before the service of either the House Speaker or the Senate President Pro Tempore in the General Assembly.

The Foundation responds that its petition for review states a claim. The petition challenges the statutes' authorization of "ATV use" in state forests and state parks because "such use degrades these constitutionally protected resources." Foundation Brief at 22. The duty of Respondents to "conserve and maintain" is antithetical to "the degradation, diminution and depletion" of our public natural resources authorized by the challenged statutes. *Id*. at 36. The Foundation contends that whether the level of environmental degradation authorized by the unconstitutional statutes is "minimal" requires evidence and a factual finding. *Id*. at 29.

The Foundation argues that *Frederick*, 196 A.3d 677, and *Murrysville Watch Committee*, No. 579 C.D. 2020, are inapposite. They involved a constitutional challenge to a zoning ordinance that allowed oil and gas development in all zoning districts, provided certain conditions were met. This case, by contrast, involves the constitutionality of state statutes that have violated the trustee's duties with respect to public lands. Respondents' claim that they have "balanced" the protection of trust assets with the recreational interests of ATV riders is not enough to escape judicial review. Foundation Brief at 19. The General Assembly in 1985 had a fiduciary duty as trustee to conserve and maintain the public natural resources when, for the first time, it authorized the use of ATVs in state forests. Prior thereto, ATVs were not allowed on state forest roads due to concerns for the ecology and safety. Petition at 14, 18, ¶¶34, 43.

The Department, which is the General Assembly's "co-trustee with expertise in conserving and maintaining the public natural resources," has repeatedly issued reports and policy statements opposing ATV use on state forest roads or any new trails on state forest land. Foundation Brief at 25; Petition at 10-12, ¶¶25-28.

14

The enactment of legislation mandating the 2021 ATV Pilot program was contrary to the Department's advice.

The Foundation argues that the challenged statutes violate the legislature's duty of loyalty and impartiality because they prioritize "the desires (not the needs) of current ATV enthusiasts and local businesses and officials interested in economic development[.]" Foundation Brief at 29. The duty of loyalty requires a trustee to "administer the trust solely in the interest of the beneficiaries," which include future generations. *PEDF II*, 161 A.3d at 934. The petition's averment that the statutes in question have reduced the value of state parks and forests for current and future generation beneficiaries is sufficient to state a claim under the Environmental Rights Amendment.

The Foundation's petition for review asserts that legislation that authorizes any ATV and snowmobile use in state forests and state parks violates the Pennsylvania Constitution. Here, the challenged statutes have authorized 265 (or so) miles of trails on over 2 million acres of state forest lands. The Foundation seeks a declaratory judgment that the Snowmobile and ATV Law and Sections 1720-E(a) and 1720-E(b) of The Fiscal Code violate the Environmental Rights Amendment.[11]

In addressing the parties' demurrer, we first consider the nature of the Foundation's constitutional challenge and whether it is a facial or "as-applied" challenge. We conclude that it is the former.

---

[11] A declaratory judgment is not granted as a matter of right. *Ronald H. Clark, Inc. v. Township of Hamilton*, 562 A.2d 965, 968-69 (Pa. Cmwlth. 1989). Whether a court should grant a declaratory judgment is a matter committed to the discretion of a court of original jurisdiction. *Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991). *See also* Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541.

First, the petition for review did not name the Department, which is the agency created by the legislature to enforce the challenged statutes. An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right[.]" *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (quoting *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011)). To present an as-applied challenge, it is necessary to name the agency responsible for the enforcement of the statute in question that has implemented the statute in an unconstitutional manner. The Foundation's petition does not name the Department, let alone assert that it has misapplied the statutes in question. Rather, the pleading contends that the Department has been "legislatively forced" to accept ATV use in state forests.

Second, the petition for review named the General Assembly and its leadership as respondents. The legislative branch of the government has no role to play in the implementation and enforcement of the laws it enacts. It is responsible only for the language of its legislation.

We conclude that the Foundation's pleading has lodged a facial challenge to the statutes in question. A facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Johnson*, 59 A.3d at 16 (quoting *Brown*, 26 A.3d at 493). "A statute is facially unconstitutional only where no set of circumstances exist[s] under which the statute would be valid." *PEDF II*, 161 A.3d at 938 n.31 (quoting *Clifton v. Allegheny County*, 969 A.2d 1197, 1222 (Pa. 2009)). "In determining whether a statute is facially invalid, courts do not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases."

16

*Germantown Cab Company v. Philadelphia Parking Authority*, 206 A.3d 1030, 1041 (Pa. 2019). As these standards plainly reflect, "facial challenges are generally disfavored," *Clifton*, 969 A.2d at 1223 n.37, and they are "the most difficult challenge to mount successfully[.]" *Commonwealth v. Pownall*, 278 A.3d 885, 905 (Pa. 2022) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

In *PEDF II*, 161 A.3d 911, the Foundation, the petitioner in this case, challenged the constitutionality of several provisions of The Fiscal Code that directed revenue generated by the lease of state forest and park lands for oil and gas extraction to be used to fund state government operations. The Foundation sought a declaratory judgment that these provisions of The Fiscal Code violated the Environmental Rights Amendment because they allowed public trust assets to be used for purposes other than preservation of these public assets. The Supreme Court held that some of the challenged Fiscal Code provisions, on their face, violated the Environmental Rights Amendment.

In so holding, the Supreme Court analyzed each sentence of the Environmental Rights Amendment, which states as follows:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27. The Court explained that the first sentence is "a prohibitory clause declaring the right of citizens to clean air and pure water, and . . . the preservation of natural, scenic, historic and esthetic values of the environment." *PEDF II*, 161 A.3d at 931. In other words, it prohibits the Commonwealth from acting in a way that "unreasonably impairs" citizens' rights to a clean environment.

17

*Id.* The second sentence confers ownership of the state's "public natural resources" upon Pennsylvania's citizens, including future generations. *Id.* The third sentence makes the natural resources the corpus of a public trust and names the Commonwealth as trustee and its citizens as the beneficiaries of the trust. *Id.* at 931-32. The Supreme Court held that "[a]s a fiduciary, the Commonwealth has a duty to act toward the corpus of the trust–the public natural resources–*with prudence, loyalty, and impartiality*." *Id.* at 932 (quoting *Robinson Township*, 83 A.3d at 957) (emphasis added). This involves two duties: "a duty to prohibit the degradation, diminution, and depletion" of our public resources and a duty to "act affirmatively via legislative action to protect the environment." *PEDF II*, 161 A.3d at 933.

Finding the minerals under state parks and forests to be "part of the corpus of Pennsylvania's environmental public trust," *id.* at 916, the Court held that the Commonwealth serves as a trustee, rather than as a proprietor, of its "public natural resources." *Id.* at 935. The royalties generated from the lease of state land for oil and gas extraction must be committed to "furthering the purposes, rights, and protections" of the Environmental Rights Amendment. *Id.* at 928 (quotation omitted). The Supreme Court ruled that Sections 1602-E and 1603-E of The Fiscal Code[12] were facially unconstitutional because they allocated the royalties from the sale of oil and gas to the General Fund, *i.e.*, to a "non-trust purpose." *PEDF II*, 161 A.3d at 938-39.[13]

---

[12] Added by the Act of October 9, 2009, P.L. 537, *as amended*, 72 P.S. §§1602-E, 1603-E.

[13] The Supreme Court remanded the matter to the Commonwealth Court to decide whether bonuses and rental payments deposited into the General Fund to pay for government operations in 2009 and 2010 pursuant to two fiscal enactments were part of the trust corpus. On July 29, 2019, this Court held that bonuses and rental payments were not for the severance of natural resources and, therefore, not part of the trust corpus. This Court held that Sections 1604-E and 1605-E of The Fiscal Code, added by the Act of October 9, 2009, P.L. 537, and the Act of July 6, 2010, P.L. 279, 72 P.S. §§1604-E, 1605-E, and Section 1912 of the Supplemental General Appropriations Act of

In *Frederick*, 196 A.3d at 684-85, township residents appealed a zoning hearing board's denial of their substantive validity challenge to an ordinance that allowed oil and gas operations in all zoning districts. The township residents argued, *inter alia*, that the zoning ordinance violated the Environmental Rights Amendment because placing an "industrial use," such as an unconventional gas well, in agricultural areas "degrades the local environment in which people live, work, and recreate, including the public natural resources on which people rely." *Id*. at 691 (quotation omitted). The residents argued, relying on *PEDF II*, that the township breached its trustee duty in the enactment of the zoning ordinance. The trial court affirmed the zoning hearing board.

In affirming the trial court, we relied upon the Supreme Court's holdings in *PEDF II* and *Robinson Township* to hold that the township residents did not prove that the zoning ordinance "unreasonably" impaired their rights under the Environmental Rights Amendment. *Frederick*, 196 A.3d at 697. Credited expert testimony proffered in the residents' substantive validity challenge established that there was a long history of oil and gas development safely coexisting with agricultural uses in the township. Further, unconventional gas development would help preserve the ability of landowners to continue farming, thereby advancing the object of the Environmental Rights Amendment.

We further noted that balancing the interest of private property owners with the public health, safety, and welfare of the community goes into the enactment

---

2009, were constitutional. *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 214 A.3d 748, 751 (Pa. Cmwlth. 2019) (*PEDF III*). The Foundation appealed, and the Supreme Court reversed. *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 255 A.3d 289, 293 (Pa. 2021) (*PEDF IV*) (holding that revenue from upfront bonus payments, rentals, and penalty interest for leases qualified as income generated by trust assets and could not be used for non-trust purposes).

of any land use regulation. *Id.* at 693 n.29. Indeed, zoning legislation accounts for the "natural, scenic, historic and esthetic values of the environment" by placing compatible uses in the same zoning district, and it is axiomatic that a zoning ordinance must balance the public interests of the community with the individual due process rights of private property owners. *Id.* at 695 (quoting PA. CONST. art. I, §27). As our Supreme Court explained in *Robinson Township*, the "'Environmental Rights Amendment does not call for a stagnant landscape' or 'for the derailment of economic or social development' or 'for a sacrifice of other fundamental values.'" *Frederick*, 196 A.3d at 694 (quoting *Robinson Township*, 83 A.3d at 953).

We concluded that courts must presume that the township "'investigated the question and ascertained what is best for . . . the good of the people' when it enacted [the zoning ordinance in question]." *Frederick*, 196 A.3d at 701 (quoting *Khan v. State Board of Auctioneer Examiners*, 842 A.2d 936, 947 (Pa. 2004)). Whether the zoning ordinance "is wise or whether it is [the] best means to achieve the desired result are matters left to the legislature, and not the courts." *Frederick*, 196 A.3d at 701 (quoting *Khan*, 842 A.2d at 947).

To succeed in its facial challenge, the Foundation must show that the statutes in question cannot be valid under any set of circumstances. *Clifton*, 969 A.2d at 1222. For example, a statute that authorized unrestricted and unlicensed snowmobile and ATV use in all state forests and state parks without regard to the particular locale may be facially invalid. However, that is not the statutory scheme before the Court. Rather, the statutes limit the development of snowmobile and ATV

20

trails and have set up a regulatory regime to enforce those limits. On their face, they meet the standards set forth in *PEDF II* and *Robinson Township*.[14]

The Environmental Rights Amendment requires the trustee to weigh and balance reasonable use of public lands, and we must presume that, here, the legislature investigated and balanced the recreational use of state forests and parks with their environmental protection and preservation. The Environmental Rights Amendment does not require a "stagnant landscape" or the "sacrifice of other fundamental values," such as recreation with mechanical devices. *Robinson Township*, 83 A.3d at 953; *Frederick*, 196 A.3d at 694. Further, the General Assembly is not required to document "some sort of pre-action environmental impact analysis" as a pre-condition to enactment of a statute, such as the Snowmobile and ATV Law. *Frederick*, 196 A.3d at 700 (quotation omitted). It is presumed that the General Assembly enacts legislation that conforms to any and all applicable constitutional mandates.

The Foundation's pleading does not state facts to show that the statutes, on their face, unreasonably impair "the environmental features of the affected locale." *Robinson Township*, 83 A.3d at 953. The factual averments are numerous but, ultimately, conclusory and contradictory.

The pleading avers, for example, that ATV trails degrade the environment. It avers that ATVs are noisy and that their 12-foot-wide trails "fragment the forest, compact the soil, [and] concentrate water flow." Petition at 27, ¶63. This broad and conclusory allegation also applies to every paved road that

---

[14] We reject the General Assembly's suggestion that the Snowmobile and ATV Law should be evaluated under *Payne*, 312 A.2d 86, which governed application of the Environmental Rights Amendment at the time the 1985 statute was enacted. *PEDF II* refined our understanding of the Environmental Rights Amendment and overruled *Payne*. The principles in *PEDF II* govern the Snowmobile and ATV Law.

21

passes through a state forest. Wider than 12 feet, these roads also fragment the forest and compact the soil. Indeed, footfalls compact the soil. The pleading challenges neither roads nor hiking trails. The pleading does not identify a particular locale where an ATV trail is inappropriate; rather, it asserts that any ATV trail, regardless of its location in an area of 2.2 million acres, violates the Environmental Rights Amendment.

The petition for review asserts that the statutes have "legislatively mandated" the Department to violate its duties as trustee. However, the petition's allegations contradict this proposition repeatedly. It states, for example, that the Department issued a policy that balances "the protection of our natural resources and the needs of all recreational uses on state lands." Petition at 18, ¶43. The petition states that the Department will not undertake any expansion of the ATV trail system without "subsequent SFERs." Petition at 20, ¶46. With regard to the 2021 ATV Pilot, the Department did an assessment of ATV use on erosion, water quality, and risk of oil spills. Petition at 20-21, ¶48. These allegations all contradict the Foundation's claim that the legislative mandates it challenges have robbed the Department of the ability to protect and preserve our natural resources.

The petition for review seeks an absolute prohibition against the use of state forests and parks for ATV use. However, the petition for review also alleges that the absolute prohibition did not work because miles of illegal trails were created even before the passage of the Snowmobile and ATV Law. Petition at 8, ¶20.

The statutes in question limit the development of snowmobile and ATV trails and have set up a regulatory regime to enforce those limits. The 2020 amendment to The Fiscal Code directs the Department to collect fees from the 2021 ATV Pilot program users and deposit them into the restricted account to fund "ATV

22

activities, *enforcement and maintenance on department lands*[.]" 72 P.S. §1720-E(b)(8) (emphasis added). The 2020 amendment also directs the Department to "monitor the use, enforcement, maintenance needs and any associated impacts to State Forest land resources" and submit a report to the legislature. 72 P.S. §1720-E(b)(9). Although the pleading avers that the challenged statutes were enacted to advance "local economic interest," Petition at 12, ¶29, economic interests are not anathema to the Environmental Rights Amendment. *Robinson Township*, 83 A.3d at 953. The plain language of the challenged statutes demonstrates the "prudence, loyalty and impartiality" required by the Environmental Rights Amendment. *PEDF II*, 161 A.3d at 931.

That the Foundation and even the Department staff may disagree with the balancing done by the legislature in allowing, but regulating, ATV use does not establish that the statutory scheme is unconstitutional on its face. The General Assembly cannot delegate its legislative power to an executive branch agency. The Foundation's proposition that the General Assembly must "seek and follow the advice" of the Department before passing laws that have environmental impact, if adopted, would violate the principle of separation of powers. Foundation Brief at 28. "The legislative power in its most pristine form is the power to make, alter and repeal laws[,]" and "[i]t is *axiomatic* that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." *Blackwell v. State Ethics Commission*, 567 A.2d 630, 636 (Pa. 1989) (emphasis in original) (quotations omitted). The Foundation seems not to appreciate that the Department is a creature of statute subject to the legislature's directives.

23

In short, the petition for review does not allege facts to show that Respondents have acted in a way that "unreasonably impair[s]" citizens' rights protected by the Environmental Rights Amendment. *PEDF II*, 161 A.3d at 931; *Frederick*, 196 A.3d at 697. The challenged statutes have set up a regulatory regime to limit and manage snowmobile and ATV trails, and courts must presume that the legislature has "investigated the question and ascertained what is best for . . . the good of the people[]" when it enacted the statutes in question. *Frederick*, 196 A.3d at 701 (quoting *Khan*, 842 A.2d at 947). The petition for review does not support the claim that, on their face, the statutes show no respect for the Environmental Rights Amendment. *PEDF II*, 161 A.3d at 938 n.31; *Clifton*, 969 A.2d at 1222. The Foundation's claim, if successful, would eliminate the balancing of recreational interests with the preservation of the forests, which deviates from *Robinson Township*, 83 A.3d at 953, and *Frederick*, 196 A.3d at 694.

For these reasons, we conclude that the petition for review fails to state a claim under the Environmental Rights Amendment upon which relief may be granted. We thus sustain Respondents' preliminary objections in the nature of a demurrer.

## Conclusion

Based on the foregoing, we sustain the preliminary objections asserting misjoinder under PA.R.Civ.P. 1028(a)(5) and demurrer under PA.R.Civ.P. 1028(a)(4) and dismiss the Foundation's petition for review.[15] Given this

---

[15] Because we dismiss the petition for review based upon misjoinder and demurrer, we need not address Respondents' other preliminary objections.

24

conclusion, the Foundation should consider withdrawing its "Addendum" to this petition for review and refiling it as a separate pleading.[16]

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Covey did not participate in the decision in this case.

Judge Wallace did not participate in the decision in this case.

_____

[16] On August 29, 2022, the Court granted the Foundation's application to amend its petition for review with an addendum. The addendum adds the Pennsylvania Department of Conservation and Natural Resources (Department) and Cindy Adams Dunn, in her official capacity as the Secretary of Conservation and Natural Resources, as Respondents and asserts that the Department's actions related to the Renovo ATV Connector Trail violated its trustee duties under the Environmental Rights Amendment, PA. CONST. art. I, §27. By order dated September 8, 2022, the Court stayed responsive pleadings to the petition addendum pending disposition of the preliminary objections.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Environmental Defense : 
Foundation, :
                Petitioner :
                     :
          v. : No. 447 M.D. 2021
                     :
Commonwealth of Pennsylvania; The :
Pennsylvania House of :
Representatives and Bryan Dean :
Cutler, in his official capacity as its :
Speaker; The Pennsylvania Senate :
and Jake Corman, in his official :
capacity as the Senate President :
Pro Tempore; and Tom Wolf, :
in his official capacity as Governor :
of Pennsylvania, :
               Respondents :

# **O R D E R**

AND NOW, this 8th day of November, 2022, the preliminary objection asserting misjoinder raised by Tom Wolf, in his official capacity as Governor of Pennsylvania, is SUSTAINED. The preliminary objections in the nature of a demurrer raised by the Commonwealth of Pennsylvania, The Pennsylvania House of Representatives and Bryan Dean Cutler, in his official capacity as its Speaker, and The Pennsylvania Senate and Jake Corman, in his official capacity as the Senate President Pro Tempore, are SUSTAINED. The Pennsylvania Environmental Defense Foundation's Petition for Review is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita