Gregory THOMAS, Petitioner

v.

Tom CORBETT et al. Governor of Pennsylvania John E. Wetzel, et al. Secretary of Corrections Shirley R. Moore Smeal Deputy Secretary of Corrections His Policy Executive Board Makers Sued in Their Individual Capacities and Official Capacities, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 20, 2013.
Decided April 29, 2014.

⟳187

Gregory Thomas, pro se.

Debra Sue Rand, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Gregory Thomas (Thomas) filed a complaint (Complaint) against Governor Tom Corbett, Secretary of Corrections John E. Wetzel, and Deputy Secretary of Corrections Shirley R. Moore Smeal (collectively DOC).[1] In his Complaint, Thomas seeks declaratory and injunctive relief with respect to DOC policies that he claims infringe on various constitutional rights arising under the First, Eighth, and Fourteenth Amendments to the United States Constitution and violate the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[2] DOC filed preliminary objections to the Complaint, challenging the legal sufficiency of his claims. We now overrule, in part, and sustain, in part, DOC's preliminary objections.

## SUMMARY OF CLAIMS

### 1. Conjugal Visits Policy

Thomas raises several claims in the Complaint relating to DOC's conjugal visit policy, which precludes conjugal visits for all inmates. Thomas avers that his religion requires him to marry and, in fact, to have multiple wives. Thomas avers that DOC's policy concerning visits from spouses precludes him from enjoying conjugal visits with his wives. Thomas avers that this policy has a detrimental effect on the status of his marriages, because his wives are threatening to divorce him under Islamic religious rules if they are unable to have intercourse with him. Based upon these averments, Thomas asserts that the

---

1. Thomas filed the Complaint in the Court of Common Pleas of Huntingdon County (trial court). DOC filed preliminary objections to the Complaint, one of which asserted that this Court had jurisdiction over the claims in the Complaint. The trial court sustained that preliminary objection and transferred the matter to this Court. This Court directed the parties to submit briefs on the remaining preliminary objections, which are the subject of this opinion and order.

2. 42 U.S.C. § 2000cc–1.

policy constitutes an unconstitutional infringement on his rights under the First Amendment to practice his religion.

Thomas also avers that DOC's refusal to permit conjugal visits is discriminatory and violates equal protection, because the general homosexual prison population is able to engage in sexual conduct with one another, but heterosexual males may not have sex. Thomas also avers that the presence of female correctional officers causes him emotional stress, which he characterizes as punishment and, apparently, claims constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Thomas also claims that the conjugal visit policy violates RLUIPA.

### 2. Prayer Oil Policy

Thomas also challenges DOC's "revised" policy, which prohibits him from obtaining and using oil that he avers is required by his religion to engage in prayer activities. Thomas avers that he believes that the oil is necessary, because without it "the jinn is all around,"[3] which, he claims, prevents his prayers from being answered. Thomas contends that the policy unconstitutionally prohibits his right to practice his religion and violates his First, Eighth, and Fourteenth Amendment rights, as well as his equal protection rights. Thomas does not specifically raise RLUIPA with regard to this policy, but in his request for relief he appears to seek relief regarding this policy based also on RLUIPA.

### 3. Phone Policy

DOC's phone policy prevents two inmates from having the same phone contact number on their phone list. Thomas avers that this policy cuts off his ability to communicate with his family and friends. Thomas suggests that a number of inmates, like him, are from Philadelphia and have the same friends and family. Thomas asserts that the policy violates his First Amendment rights.

### 4. Commissary Policy

Thomas also objects to DOC's regulation concerning inmates' rights to purchase items from outside sources, 37 Pa.Code § 94.3. Thomas appears to *aver* that the regulation permits him to purchase items from sources other than the institution's commissary only if an item is not listed on the master commissary list. Thomas specifically avers that his family may not purchase sneakers for him from a source for sneakers that would be less expensive than the sneakers available through the commissary. Thomas avers that he cannot afford to pay the price of some items on the commissary list and that this constitutes discrimination against him based on his impoverished status. Thomas also contends that the policy violates his equal protection rights.

### 5. Relief Sought

Thomas seeks declaratory relief in the nature of an order declaring that the foregoing DOC policies violate his constitutional rights and his statutory rights under the RLUIPA. Thomas seeks injunctive relief to prevent DOC from applying the challenged policies and asks that DOC desist from applying the subject policies until it adopts other policies responsive to his claims.

---

**3.** Thomas does not include a description of what "the jinn" means in the Islamic religion. The term is encompassed as a form of the word "jinni" which is defined as "one of a class of beneficent or malevolent spirits in Islam that inhabit the earth, that are capable of assuming various forms, and that exercise supernatural power." Webster's Third New International Dictionary 1216 (1993).

## DISCUSSION

 In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski,* 167 Pa.Cmwlth. 458, 648 A.2d 595, 600 (1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare,* 67 A.3d 160, 170 (Pa.Cmwlth.2013).

### A. Conjugal Visit Policy

[5] Courts have held that a correctional authority's policy to deny conjugal visits does not deny an inmate any constitutional right. *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.1975), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); *Imprisoned Citizens Union v. Shapp,* 451 F.Supp. 893, 898–99 (E.D.Pa.1978). Thus, Thomas cannot prevail on his constitutional challenges to the policy.

 Section 3 of RLUIPA, 42 U.S.C. § 2000cc–1, creates statutory protection for inmates in the exercise of their religion, providing, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . .

even if the burden results from a rule of general applicability" unless the government establishes that the burden on religion furthers a "compelling governmental interest" through the "least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc–1(a)(1)–(2). In *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005), the United States Supreme Court, in addressing a facial First Amendment Establishment Clause[4] challenge to this provision of RLUIPA, observed that this provision was "the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens." *Id.* at 714, 125 S.Ct. 2113. The Supreme Court also noted that governmental accommodation of religious exercise does not necessarily constitute an improper governmental establishment of religion in violation of the First Amendment. *Id.* at 713–14, 125 S.Ct. 2113. RLUIPA, as compared to the Establishment Clause, thereby imposes a greater burden on institutional entities in the defense of regulations and policies that impose burdens on an individual's desire to practice his or her religion while incarcerated.

 In *Cutter,* the Supreme Court held that RLUIPA bars inquiry into whether a particular practice is central to an inmate's religion, *id.* at 725 n. 13, 125 S.Ct. 2113 but permits an institutional defendant to challenge an inmate's RLUIPA claims where the defendant can demonstrate that the inmate does not sincerely believe in the religion or practice. *Id.* When an inmate makes an affirmative showing in his pleadings that an institutional policy or regulation has substantially burdened his sincerely held religious beliefs, the institution must demonstrate that the burden is the

---

4. The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

least restrictive means of furthering a compelling governmental interest. *Id.* at 715–16, 125 S.Ct. 2113.

This holding mirrors the precedent that had been applied in challenges under RLUIPA's predecessor statute, the Religious Freedom Restoration Act (RFRA).[5] As our Supreme Court explained: "Congress enacted RFRA to restore application of the 'compelling interest' test established in *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ... to free exercise claims." *Commonwealth v. Stewart*, 547 Pa. 277, 290 n. 5, 690 A.2d 195, 201 n. 5 (1997). Under the "compelling interest" standard developed under RFRA, which is identical to the standard set forth in RLUIPA, our own Supreme Court held that "[o]nce the plaintiff has satisfied his or her burden, the government must establish that the burden advances a *compelling interest* and is the *least restrictive means* of doing so." *Id.* at 290, 690 A.2d at 201.

In *Mobley v. Coleman*, 65 A.3d 1048 (Pa.Cmwlth.2013), this Court addressed preliminary objections DOC filed with regard to a prisoner complaint challenging a policy that he claimed burdened his religious beliefs. The inmate, Mobley, objected to DOC's refusal to provide a separate worship for his avowed religion, the Nation of Islam. Mobley asserted that DOC, in addition to refusing to provide a worship service distinct from one afforded a different Islamic sect, also compelled inmates who practiced the Nation of Islam religion to support and attend the other sect's services. Mobley contended that DOC's actions violated, *inter alia*, his rights under RLUIPA.

With regard to Mobley's claim under RLUIPA, we sustained DOC's preliminary objection. We concluded that, given a fair reading of his Complaint, Mobley failed to state a claim under RLUIPA, because his pleadings, even if accepted as true, did not demonstrate that DOC's actions substantially burdened the exercise of his sincerely held religious beliefs. In this case, DOC does not challenge at this point either the nature of Thomas's beliefs or whether the prohibition constitutes a substantial burden on such beliefs. Thus, for the purpose of evaluating DOC's preliminary objection, we presume that Thomas has pleaded sufficient facts to demonstrate that DOC's conjugal visit policy substantially burdens Thomas's exercise of sincerely held religious beliefs.

Rather, DOC asserts only *as a matter of fact* that it has a compelling government interest in prohibiting conjugal visits, namely the security of the prison and the safety of inmates and staff. As in our decision in *Mobley*, however, albeit in the context of a constitutional challenge, we may not accept DOC's concerns as fact for the purpose of the preliminary objections to Thomas's RLUIPA claims. As we commented in *Mobley*:

> While all of those concerns set forth in [DOC's] preliminary objections are valid penological interests that could justify their position, those reasons cannot be advanced because when considering a demurrer, a court cannot consider matters collateral to the complaint, but must limit itself to such matters as appear therein, and an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible "speaking demurrer."

*Id.* at 1053.

In accordance with *Mobley*, we cannot accept as fact DOC's assertions that it has a compelling reason for imposing the pro-

---

5. Former 42 U.S.C. §§ 2000bb–2000bb–4.

hibition. Essentially, DOC is suggesting we accept on faith the veracity of these assertions.[6] Congress, however, in adopting the "compelling interest" standard in RLUIPA, as indicated by the United States Supreme Court in *Cutter*, intended to impose a more demanding evidentiary standard on a governmental agency or official when they create a substantial burden on a person's religious freedom, in comparison to the standard developed under the First Amendment. RLUIPA provides for the following evidentiary standards when a person challenges a governmental entity's policies or regulations:

> (b) Burden of persuasion. If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc–2. If we were to consider DOC's bald assertions regarding a compelling institutional purpose for prohibition of conjugal visits, we would be denying Thomas any opportunity to carry his burden of persuasion on the issue.

DOC relies upon the Supreme Court's comment in *Cutter* that "prison security is a compelling state interest, and that deference is due to institutional officials' exper-

tise in this area." *Cutter*, 544 U.S. at 725, 125 S.Ct. 2113. This may certainly be a correct statement of the law, but DOC must still offer something in addition to simple argument. In *Cutter*, the Supreme Court also noted that the district court found, based upon the "underdeveloped state of the record," that it would be impossible to make a finding at that point in the proceedings that "it is factually impossible [for the defendant there] to provide the kind of accommodations that RLUIPA will require without significantly compromising prison security or the levels of service provided to other inmates." *Id.*

Moreover, RLUIPA requires not only that a governmental agency show that its challenged policy or regulation serves a compelling governmental interest, but also that the means the agency has chosen to serve that interest is the least restrictive means available to accomplish the objective. In *Lewis v. Ollison*, 571 F.Supp.2d 1162 (C.D.Ca.2008), the federal district court for the Central District of California, in discussing RLUIPA, observed that although prison officials are entitled to deference as to prison security decisions, "in order to meet their burden to show 'least restrictive means' they must demonstrate that they have 'considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.' [*Greene v. Solano Cnty. Jail*, 513 F.3d 982, 989–90 (9th Cir.)] (quoting *Warsoldier v. Woodford*, 418 F.3d [989, 999 (9th Cir. 2005))]." *Lewis*, 571 F.Supp.2d at 1168. DOC has failed to even argue that its

---

**6.** We note that in analyzing claims under the rational review standard applied in Equal Protection challenges, courts sometimes permit a governmental entity to offer possible justifications for disparate treatment, and the courts may "hypothesize" regarding a governmental agency's *legitimate* reasons for adopting a policy that affects a federally recognized constitutional right. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1

(1992) ("Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification.") RLUIPA, however, imposes distinct burdens of persuasion and proof on governmental entities defending a policy or regulation and those challenging the same.

means is the least restrictive method by which to accomplish its alleged compelling governmental interest. DOC simply is not entitled at this early stage of the proceedings to dismissal of Thomas's RLUIPA challenge to the conjugal visit policy.

### B. Prayer Oil Policy

■ As with its argument regarding conjugal visits, DOC simply asserts that it has several reasons for its prayer oil policy, *i.e.*, preventing inmates from masking the smell of illegal drugs and preventing fire (because the oil is flammable). DOC also points to its actual policy, which permits Muslims who are attending Jumu'ah[7] to have a small amount of scented oil placed on their wrists. DC–ADM 8193.-B.5.b. Although DOC sets forth its asserted interests and cites a policy that allows some limited use of oil, DOC makes no argument relative to the applicable legal standards involved or the question regarding the least restrictive means requirement under RLUIPA. Based upon our holding in *Mobley*, we will overrule DOC's preliminary objection to Thomas's First Amendment claim involving the use of prayer oil. Similarly, based upon our reasoning above regarding Thomas's claims under RLUIPA relating to conjugal visits,

we will overrule DOC's preliminary objection to this claim.

■ Thomas also raises a claim under the Eighth Amendment.[8] In order to maintain a claim under the Eighth Amendment based upon prison conditions, an inmate "must satisfy both an objective and subjective test." *Allah v. Ricci*, 532 Fed. Appx. 48 (3d Cir.2013). Under these requirements, an inmate must demonstrate that the deprivation he alleges is "sufficiently serious" and that the correctional institution has deprived him of "minimal civilized measure of life's necessities." *Id.* at 51. Furthermore, an inmate must also demonstrate that the conditions under which he is confined pose a substantial risk of harm and that the officials who have allegedly deprived the inmate of such necessities did so with a sufficiently culpable state of mind and acted with deliberate indifference to the inmate's health or safety.[9] *Id.*

In this case, none of the factual averments in Thomas's Complaint, even if accepted as true, demonstrate any of the elements necessary for success on a claim under the Eighth Amendment for unconstitutional conditions of incarceration relating to the prayer oil policy. Consequently, to the extent Thomas seeks relief under

---

7. Thomas does not define the term "Jumu'ah." In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the United States Supreme Court considered a First Amendment challenge to a prison policy that restricted an inmate's rights to attend "Jumu'ah," and described "Jumu'ah" as "the central religious ceremony of Muslims, 'comparable to the Saturday service of the Jewish faith and the Sunday service of various Christian sects.'" *Id.* at 360, 107 S.Ct. 2400 (quoting *Shabazz v. O'Lone*, 595 F.Supp. 928, 930 (D.N.J.1984), *vacated on other grounds*, 782 F.2d 416 (3d Cir.1986)). The United States District Court for the District of New Jersey in *Shabazz* determined that "[t]he Jumu'ah is ... regarded as the central service of the Muslim religion, and the

obligation to attend is commanded by the Qur'an, the central book of the Muslim religion." *Id.* at 930. Thus, while we do not make a factual finding regarding this term, it appears that it is a type of mandatory congregational service.

8. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required ... nor cruel and unusual punishments inflicted."

9. Thomas also raises a vague claim regarding "equal protection." Because DOC does not include a preliminary objection to this putative claim, we will not discuss it. DOC may seek dismissal or address the claim in a future pleading.

the Eighth Amendment, we sustain DOC's preliminary objections.

### C. Phone Policy

■ DOC also objects to Thomas's claim that DOC's phone policy violates his First Amendment rights. For the reasons we expressed above regarding Thomas's claim concerning prayer oil, we will overrule DOC's preliminary objection to this claim. As noted above, the policy, on its face, prohibits one inmate from having a person's phone number on his approved list of phone contacts, if another inmate also has the same phone number on his phone list. DOC refers to various decisions recognizing that inmates have no right to unlimited phone use, *Chimenti v. Department of Corrections*, 720 A.2d 205 (Pa.Cmwlth.1998), *affirmed*, 559 Pa. 379, 740 A.2d 1139 (1999),[10] and that safety, security, and orderly operation of prisons are justifications for limiting an inmate's telephone use, *Griffin–El v. MCI Telecomm. Corp.*, 835 F.Supp. 1114 (E.D.Mo. 1993), *affirmed*, 43 F.3d 1476 (8th Cir. 1994).[11] DOC also argues that its policy provides for exceptions to the rule, permitting inmates to request a facilities manager to add to his or her list a person who is on another inmate's list. Moreover, as DOC points out, there is no similar limitation regarding communication through other means, such as through traditional mail.

■ Although DOC is correct in stating that we have held there is no unlimited right to telephone use by inmates, Thomas is not seeking unlimited phone rights. Because telephone communication is of a type that triggers constitutional concerns, DOC is required to satisfy the four-factor test established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). That test requires courts to consider the following factors in evaluating whether a regulation or policy that impinges on an inmate's constitutional rights is related to a legitimate penological interest: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate, neutral, governmental interest advanced to justify the regulation; (2) whether the inmate has an alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) "whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at a de minimis cost to valid penological objectives." *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254. As we stated *Mobley*, while the concerns DOC expresses in its preliminary objections "are valid penological interests that could justify [its] position, those reasons cannot be advanced because when considering a demurrer, a court cannot consider matters collateral to the complaint." *Id.* at 1053. Similarly, although DOC briefly suggests that an inmate has the alternative avenue of communications with persons outside an institution (a relevant consideration under *Turner*), *i.e.,* writing a letter, we may not consider this alleged fact in our review of DOC's preliminary objections.

### D. Commissary Policy

■ DOC's final preliminary objection seeks dismissal of Thomas's claim that

---

**10.** Recently, in *Karoly v. Mancuso*, 619 Pa. 486, 65 A.3d 301 (2013), our Supreme Court rejected certain dictum contained in *Chimenti*. That rejected dictum related to an issue that is not relevant to our discussion in this case.

**11.** DOC also suggests that the policy is needed in order to discourage inmates from engaging in conspiracies with outside persons for the purpose of planning escapes or victim/witness intimidation or attacks.

DOC's commissary policy and prohibition on purchases from outside sources when an item is available through the commissary violates his Eighth Amendment rights and violates his due process rights by discriminating against him on the basis of his status as an impoverished person.

Thomas's pleadings are not particularly clear on the subject of commissary and outside vendor purchases. In general, Thomas appears to complain that DOC's regulation permits friends and family of his to send only items that are on an approved list and only from approved vendors. This appears to be an accurate description of the regulation pertaining to outside source purchases, 37 Pa.Code § 93.4, which provides:

Purchase for inmates by family and friends

(a) Family and friends, who are on the inmate's approved visiting list, may purchase approved items under this section. The facility may disapprove and decline to accept any purchase which does not meet this section.

(b) Only those items listed on the current Approved Master Commissary List may be purchased from approved vendors. Copies of the list are provided to the inmates. . . .

(c) Purchases shall be approved prior to the time the item is received by the facility.

(d) Only those items shipped directly from the vendor to the facility will be accepted.

(e) Unauthorized or disapproved items will be returned to the sender at the expense of the inmate.

Thomas avers generally that the regulation prevents him and his family and friends who visit him from purchasing approved items on the Master Commissary list. Thomas avers specifically that: (1) he requested to purchase sneakers and underwear under Title 37 of the Pennsylvania Administrative Code; (2) he and his family are poor and cannot afford commissary prices sometimes; and (3) his family and friends requested to send approved items using their credit cards but DOC refused to permit them to do so. Thomas then references the requirement that items must be shipped directly from the approved vendor. 37 Pa.Code § 93.4(b). Thomas avers that he is too poor "to purchase sneakers like all the other inmates who are able to purchase items at [the] commissary themselves. His family and friends . . . offered to purchase sneakers and underwear from an approved vendor according to [the] law but [DOC] refuse[d] the purchase." (Complaint ¶ 32.) With regard to the sneaker issue, Thomas's consistent claim throughout appears to be only that the policy is discriminatory because "some inmates can purchase sneakers from the approved outside vendor, [in a] certain size[, a]nd they can spend $80.00 for sneakers. But [he] cannot purchase sneakers unless they come from the prison commissary and the price limit is $50.00 to $55.00." (Complaint ¶ 33.)

From these sparse averments in the Complaint, it is impossible to discern the precise problem about which Thomas is complaining. First, it is not clear from the averments whether DOC has denied any outside purchase request based upon some arbitrary reason not reflected in the regulation, or whether Thomas's friends and family are seeking to bypass the "direct shipment" requirement, which is one with which all inmates must comply. Second, from a review of the factual averments in paragraphs 32 and 33 of the Complaint, noted above, it appears that Thomas objects to the fact that some inmates have access to sneakers that cost $80.00 and inmates who purchase sneakers from the commissary are restricted to sneakers that

cost $50.00 to $55.00. The pleadings are simply unclear, and we are unable to guess at the precise problem Thomas is claiming to have. Consequently, we can discern no facts that establish a deprivation of due process or a violation of equal protection based upon 37 Pa.Code § 93.4. Accordingly, we will sustain DOC's preliminary objection to Thomas's claim purporting to arise under the due process and equal protection clauses.

■ Additionally, although we do not view Thomas's Complaint as clearly or vaguely raising an Eighth Amendment claim, we will assume for the purposes of argument that he has done so and will address DOC's preliminary objection to any such claim Thomas has or may have made. As indicated above, an inmate must allege facts sufficient to demonstrate that a deprivation of a right is "sufficiently serious," and that the correctional institution has deprived him of life necessities. An inmate must also demonstrate that a substantial risk of harm arises as a consequence of the challenged action, and that the condition poses a substantial risk of harm. Thomas has not pleaded such facts, and we do not believe that he could. Accordingly, we will sustain DOC's preliminary objection to this claim in the Complaint.

In summary, we sustain DOC's preliminary objections to Thomas's Constitutional claims relating to his desire for conjugal visits, but overrule its preliminary objections to his RLUIPA claim with respect to the DOC policy against such visits. With regard to Thomas's claims relating to DOC's prayer oil policy, we sustain DOC's preliminary objection to Thomas's Eighth Amendment claim, but overrule DOC's preliminary objections to Thomas's First Amendment and RLUIPA claims. With regard to Thomas's challenge to DOC's telephone policy, which appears to present

a claim only under the First Amendment, we overrule DOC's preliminary objection. With regard to Thomas's claims involving DOC's commissary policy, we sustain DOC's preliminary objections.

## MOTION TO QUASH

■ DOC has also filed a motion to quash exhibits that Thomas included in his brief in opposition to DOC's preliminary objections. DOC is correct in arguing that Thomas should not have attached the documents to his brief. In accordance with our review of preliminary objections in general, we are bound to consider DOC's demurrers based upon the legal sufficiency of Thomas's pleadings alone. *Meier.* As DOC notes, in *Feigley v. Department of Corrections,* 872 A.2d 189 (Pa.Cmwlth. 2005), we commented that "[f]actual disputes are framed by pleadings, not briefs," and rejected the additional allegations offered by an inmate through, *inter alia,* documents attached to his brief. *Id.* at 193 n. 3. Accordingly, we grant DOC's motion to quash those documents.

## *ORDER*

AND NOW, this 29th day of April, 2014, we sustain, in part, and overrule, in part, Respondents' (collectively DOC) preliminary objections to Petitioner Gregory Thomas's (Thomas) complaint, as follows:

1. As to Thomas's claims challenging DOC's policy prohibiting conjugal visits, DOC's preliminary objections to Thomas's constitutional claims are SUSTAINED, and DOC's preliminary objections to Thomas's claim based on the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc–1, are OVERRULED.

2. With regard to Thomas's claims relating to DOC's prayer oil policy,

DOC's preliminary objection to Thomas's Eighth Amendment claim is SUSTAINED, and DOC's preliminary objections to Thomas's First Amendment and RLUIPA claims are OVERRULED.

3. With regard to Thomas's challenge to DOC's phone policy, which appears to present a claim only under the First Amendment, DOC's preliminary objection is OVERRULED.

4. With regard to Thomas's claims involving DOC's commissary policy, DOC's preliminary objection to claims under the Eighth Amendment is SUSTAINED.

Additionally, DOC's motion to quash exhibits attached to Thomas's brief is GRANTED, and the exhibits are hereby STRICKEN.