IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| David N. Hommrich, | : | |
|       Petitioner | : | |
|       v. | : | No. 463 M.D. 2022 |
| | : | Submitted: October 10, 2023 |
| Commonwealth of Pennsylvania, | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
|       Respondent | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT             FILED: March 1, 2024

David N. Hommrich, *pro se*, has filed an amended petition for review in this Court's original jurisdiction seeking declaratory relief. Hommrich challenges the Pennsylvania Public Utility Commission's (PUC) regulations on alternative energy projects as inconsistent with the Alternative Energy Portfolio Standards Act (AEPS Act).[1] In response, the PUC has filed a demurrer to Hommrich's amended petition asserting that he lacks standing and failed to exhaust his administrative remedies. Additionally, the PUC objects to the amended petition on grounds that it does not plead with specificity that Hommrich suffered harm and failed to join as necessary parties all electric distribution companies (EDCs) and PUC-approved alternative suppliers. For the reasons that follow, we overrule the PUC's preliminary objections.

---

[1] Act of November 30, 2004, P.L. 1672, *as amended*, 73 P.S. §§1648.1-1648.8.

**Background**

Hommrich is the sole owner of a renewable energy project, which he purchased from his employer, Pennsylvania Microgrids, LLC (Penn Micro). Amended Petition ¶3.

As Hommrich, himself, states: "[a]t the heart of this [p]etition is the statutory construction of the [AEPS] Act as it applies to the interconnection of renewable energy systems." Amended Petition ¶6. He further explains that "[i]nterconnection is the mechanism through which a source of generation connects and delivers power to an electrical distribution system. Without interconnection, most[,] if not all[,] renewable energy projects under the AEPS Act [could not] function." *Id*. ¶7. Hommrich states that the gravamen of his petition is "the statutory interpretation of the AEPS Act and the ongoing regulatory overreach by the PUC in matters dealing with the [AEPS] Act." *Id*. ¶9. He asks the Court to "provide declaratory relief regarding certain issues that the PUC has failed to address regarding the timely and cost-effective interconnection of renewable energy systems under the AEPS Act." *Id*.

Specifically, Hommrich challenges the validity of three PUC regulations: 52 Pa. Code §75.67 (relating to alternative energy cost-recovery); 52 Pa. Code §75.38 (relating to Level 2 interconnection review); and 52 Pa. Code §75.39 (relating to Level 3 interconnection review). He also challenges "[a]ny PUC regulation that allows an EDC to charge a customer-generator for distribution system improvement costs associated with the interconnection of a customer-generator's renewable energy system[.]" Amended Petition at 27, Request for Relief ¶D. The amended petition asserts that these regulations violate the AEPS Act because an EDC is required to extend its existing network to connect with an alternative energy

2

project and then compensate the project (or customer-generator) for the energy received therefrom. Amended Petition ¶¶24-53 and Requests for Relief ¶¶A-D.

The amended petition asserts that the PUC's regulations contravene the AEPS Act because they permit an EDC to recover its connection costs only from the customer-generator, not the ratepayers of the default electric service utility. The regulations have altered the AEPS Act by changing "shall" to "may" and by adding language (*e.g.*, "reasonable and prudently") that does not appear in the statute. Amended Petition ¶34. Hommrich seeks a declaratory judgment that establishes:

A.      Excess energy that an EDC purchases from a customer-generator under the AEPS Act represents the purchase of a resource as defined in the AEPS Act.

B.      The cost for distribution system improvements to allow a customer-generator to interconnect to an EDC's distribution system is a direct or indirect resource, as that term is used in the AEPS Act, and must be recovered from ratepayers, not from the customer-generator.

C.      The PUC does not have the authority to promulgate regulations that alter the clear language of the AEPS Act, which has rendered regulations at 52 Pa. Code §75.67 unlawful and unenforceable.

D.      Any PUC regulation that allows an EDC to charge a customer-generator for costs associated with the interconnection of a customer-generator's renewable energy system is invalid under the AEPS Act.

E.      The language in an EDC's net metering application that requires that the renewable energy project offset a customer-generator's need for electricity is unlawful and unenforceable.

F.      Any language in an EDC's net metering application that states that an EDC may disqualify a customer-generator's renewable energy system because of excess energy generation is unlawful and unenforceable.

G.      The PUC must compel all EDCs to remove language from agreements with customer-generators that violate the AEPS Act.

3

H.     Customer-generators may use third-party contractors, under confidentiality commitments with an EDC, to facilitate a timely and cost-effective interconnection, so long as the cost or timeline of the third-party option results in a lower cost or a shorter timeline for the customer-generator.

I.     The AEPS Act does not allow an EDC to charge a customer-generator a contribution in aid of construction (CIAC). This requirement by an EDC is invalid and unenforceable.

Amended Petition at 27-28, ¶¶A-I.

**Preliminary Objections**

On December 14, 2022, the PUC filed preliminary objections in the nature of a demurrer to Hommrich's amended petition. First, the PUC argues that Hommrich failed to plead with specificity that he has experienced any harm. Second, the PUC objects on the basis that Hommrich lacked standing to seek any of the relief he sought. Third, the PUC argues that Hommrich failed to join indispensable parties. Fourth, the PUC argues that it has exclusive jurisdiction over matters raised in Hommrich's amended petition, and administrative remedies have not been exhausted.

On January 13, 2023, Hommrich filed an answer to the PUC's preliminary objections, and both parties filed briefs.

**Standard of Review**

Pennsylvania Rule of Appellate Procedure 1516(b) authorizes the filing of preliminary objections to an original jurisdiction petition for review. *See* PA.R.A.P. 1516(b). In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the amended petition for review and any reasonable inferences therefrom. *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014). "The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the

4

petition for review." *Id.* We may sustain preliminary objections where the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.*

## I. Contents of Pleading

Initially, the PUC objects to Hommrich's amended petition as not complying with the pleading requirements of the Pennsylvania Rules of Civil Procedure because it does not adequately explain whether, when, or how he was allegedly impacted by the regulations he is challenging.[2] Rule 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." PA.R.CIV.P. 1019(a). The PUC notes that "the pleadings must adequately explain the nature of the claim . . . so as to permit the preparation of a defense, and [] they must be sufficient to convince the court that the averments are not merely subterfuge." PUC Brief at 12 (quoting *Martin v. Lancaster Battery Company, Inc.*, 606 A.2d 444, 448 (Pa. 1992)).

The PUC explains that Section 75.67 of its regulations, 52 Pa. Code §75.67, "on its face" applies only to a "default service provider"[3] and lists the costs such a provider may recover from its customers. PUC Brief at 12. The PUC

---

[2] Pursuant to Rule 1517 of the Pennsylvania Rules of Appellate Procedure, "[u]nless otherwise prescribed by these rules, the practice and procedure under this chapter relating to pleadings in original jurisdiction petition for review practice shall be in accordance with the appropriate Pennsylvania Rules of Civil Procedure, so far as they may be applied." PA.R.A.P. 1517.

[3] A "default service provider" is:

> An electric distribution company within its certified service territory or an alternative supplier approved by the commission that provides generation service to retail electric customers who:
>
>> (1) contract for electric power, including energy and capacity, and the chosen electric generation supplier does not supply the service; or
>>
>> (2) do not choose an alternative electric generation supplier.

66 Pa. C.S. §2803.

5

contends that Hommrich cannot challenge this regulation because this regulation "has no bearing on [] Hommrich or his putative business plans." PUC Brief at 14. Thus, the pleading lacks the requisite specificity.

Hommrich acknowledges that he is not a default service provider, an EDC, or an alternative energy supplier. He contends that he does not need to be any of these things to pursue his declaratory judgment action. In his capacity as an owner of an alternative energy project, Hommrich requests this Court to determine whether the AEPS Act "intended for unchecked costs and indeterminate timelines to be imposed on those who wish to own and operate alternative energy systems[.]" Hommrich Brief at 30. Hommrich asserts that pre-enforcement review of regulations is allowed, and he does not need to be a default service provider in order to challenge a regulation that adversely impacts his business. "A party interested in becoming a customer-generator is exposed to financial risk well before [it is] actually deemed one by the PUC." Hommrich Brief at 24 (citing *Hommrich v. Pennsylvania Public Utilities Commission*, 231 A.3d 1027 (Pa. Cmwlth. 2020) (*Hommrich II*), wherein the Court allowed pre-enforcement review because of the potential for financial harm).

This Court's determination in *Hommrich v. Pennsylvania Public Utilities Commission* (Pa. Cmwlth., No. 674 M.D. 2016, filed July 28, 2017) (*Hommrich I*), is relevant to the present matter. In *Hommrich I*, Hommrich also challenged the nature of certain PUC regulations pertaining to net metering, contending that they were inconsistent with, and not authorized under, the AEPS Act. There, Hommrich, who was president of Sunrise Energy, LLC (Sunrise Energy), sought to develop alternative renewable energy assets, specifically solar power facilities. The projects were separate from any assets owned by Sunrise

6

Energy, which would not be involved in the projects. The projects in *Hommrich I* were planned prior to the enactment of the challenged PUC regulations and had not been approved by the PUC for net metering prior to Hommrich's acquisition of them. By contrast, here, the alternative energy project Hommrich purchased from Penn Micro was approved for net metering while it was owned by Penn Micro, and nothing in the AEPS Act or the PUC's regulations requires that an alternative energy system project must be re-submitted for approval when a change in ownership occurs.

In *Hommrich I*, Hommrich asserted that his proposed projects qualified for net metering under the AEPS Act but not under the PUC's regulations. There, we determined that the pleading had sufficient specificity and stated a viable claim for relief. In the present matter, as in *Hommrich I*, the amended petition alleges that the challenged regulations cause Hommrich direct harm because they interfere with his ability to secure financing for his project. Stated otherwise, the PUC's regulations pose the same financial harm they did in *Hommrich I*. Accordingly, we overrule the PUC's preliminary objection that Hommrich has failed to adequately explain the nature of his claims regarding whether, when, or how he is impacted by the regulations he is challenging.

## II. Standing

In its second preliminary objection, the PUC argues that Hommrich lacks the capacity to sue because his amended petition does not aver that he is a default service provider, an EDC, or alternative supplier approved by the PUC. Hommrich's amended petition asserts that it is unlawful to require a customer-generator to pay for the design and construction of interconnections, but this affects

7

Penn Micro, not Hommrich. Penn Micro is not a party to the present action, and Hommrich is not authorized to represent Penn Micro.

The PUC contends that EDCs and alternative suppliers have a vested interest in the regulations that authorize recovery of AEPS Act-related costs. Were the challenged regulation to be declared invalid, these entities will be affected. At a minimum, they will experience regulatory uncertainty, and at worst, a loss of revenue. The PUC asserts that Penn Micro is "the only [PUC]-approved customer-generator appearing on the face of [Hommrich's] [a]mended [p]etition. Nor does it appear that [] Hommrich intends to become a customer-generator pursuant to the [PUC's] rules." PUC Brief at 21.

Hommrich responds that he plans to build alternative energy projects. Pre-enforcement review is allowed where there is a risk of imminent harm from a regulation. Under the PUC's regulation, Hommrich could incur costs in excess of $1 million for distribution system improvements, which, Hommrich contends, should be paid by the ratepayers of default service customers. Otherwise, he cannot proceed with his plans. Hommrich argues that he need not first suffer a financial loss or become a customer-generator in order to seek relief from the regulation. Further, "the only possible path forward for Hommrich under the AEPS Act is to become a customer-generator, and the PUC knows this." Hommrich Brief at 43. Hommrich's present project was approved by the PUC for net metering while it was owned by Penn Micro. Because Hommrich currently owns the project outright, he is representing his own interests, not those of Penn Micro.

This Court's prior determination in *Hommrich I* established that Hommrich has standing to bring his statutory construction claims. As in *Hommrich I*, the amended petition alleges that the challenged regulations cause him direct harm

8

because he cannot secure financing for his project. To the extent his project was not an approved customer-generator in *Hommrich I*, Hommrich has rectified that deficiency by purchasing a project from Penn Micro that was previously approved by the PUC for net metering. Thus, Hommrich's amended petition in the present matter does not suffer from the same deficiency as in *Hommrich I*, and the PUC does not refer to any authority requiring Hommrich to obtain new approval for his project due to the change in ownership. Accordingly, we overrule the PUC's second preliminary objection that Hommrich lacks the capacity to sue.

### III. Nonjoinder

Next, we address the PUC's third preliminary objection regarding Hommrich's failure to join a necessary party pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(5), PA.R.CIV.P. 1028(a)(5).[4] At issue are the costs to interconnect to an EDC's distribution system and the recovery of those costs under Section 3 of the AEPS Act, in which EDCs and alternative suppliers have a vested interest. The PUC argues that in the event the challenged regulations should be declared invalid, these entities will be affected by regulatory uncertainty and/or lost revenue. In addition, the PUC argues that because Hommrich's amended petition contains allegations about the conduct of Pennsylvania Power Company (Penn Power), Penn Power is also a necessary party.[5] Finally, Penn Micro is also a

---

[4] It states:

> Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> . . . .
>
> > (5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action[.]

PA.R.CIV.P. 1028(a)(5).

[5] Whether a party is indispensable is governed by "at least" the following:

9

necessary party, given the allegations about Penn Micro's requested interconnection with Penn Power.

Hommrich rejoins that the relief he seeks will not affect any EDC, which will recover the interconnection costs, either from customer-generators, under the current regulations, or from default service customers, as mandated in the AEPS Act. There is no outcome where an EDC's costs will increase. In any case, EDCs are obliged to follow the AEPS Act, as construed by this Court. Penn Micro is not a party, and the amended petition asserts no claims against Penn Power.

In his capacity as president of Penn Micro, Hommrich has received numerous emails from Penn Power, which have been referenced in his amended petition to illustrate the PUC's current regulatory regime. Kriebel Minerals, Incorporated (Kriebel)[6] in its petition to intervene in this matter, included its communications with a different utility, *i.e.*, West Penn Power, for illustrative purposes. Both Kriebel and Hommrich believe that the problems with interconnections have their root cause in the PUC's regulations. Communications used in a pleading for illustrative purposes do not require that all entities referenced in these communications be joined as parties. Both Hommrich and Kriebel are

---

(1)   Do absent parties have a right or interest related to the claim? (2) If so, what is the nature of the right or interest? (3) Is that right or interest essential to the merits of the issue? (4) Can justice be afforded without violating the due process rights of absent parties?"

*CRY, Inc. v. Mill Service, Inc.*, 640 A.2d 372, 375 (Pa. 1994) (quoting *Mechanicsburg Area School District v. Kline*, 431 A.2d 953, 956 (Pa. 1981)).

[6] Kriebel Minerals, Inc., a natural gas company operating in the Commonwealth of Pennsylvania, was permitted to intervene in the present action. It avers that its intervention concerns the same "improper actions, and inactions, by the PUC raised by [] Hommrich." Application for Intervention at 2. It opposes all of the PUC's preliminary objections in the present matter and joins in Hommrich's Brief.

10

challenging the PUC's regulatory actions and inactions, but neither has alleged a dispute with *any specific* EDC.

The PUC raised Hommrich's failure to join indispensable parties in *Hommrich I*. There, we explained that "EDCs do not have a right or interest regarding the validity of the regulations or who qualifies as a customer-generator. The EDCs merely apply the law in effect when ruling on the applications. Thus, we conclude the EDC is not an indispensable party[.]" *Hommrich I*, slip op. at 18. The amended petition avers that Hommrich has not, never filed, and does not plan to file a complaint against Penn Power. The issues in the amended petition arise from the PUC's regulations. *See CRY, Inc.*, 640 A.2d at 375 (internal citation omitted) (a party is considered indispensable when its rights are "so directly connected with and affected by litigation" that no decree can be made without impairing those rights).

For the same reasons articulated in *Hommrich I*, we overrule the PUC's third preliminary objection that Hommrich has failed to join an indispensable party, or parties, in the present matter.

## IV. Exhaustion of Remedies

In its fourth preliminary objection, the PUC argues that it has exclusive jurisdiction to adjudicate Hommrich's claims about Penn Power's interconnection practices and tariff and that Hommrich failed to exhaust his administrative remedies with the PUC. Hommrich rejoins that the amended petition does not assert a legal action against Penn Power in the prayer for relief. Rather, it challenges the PUC's impermissible regulatory regime. Hommrich's requested ruling from the Court would construe the AEPS Act and, indirectly, affect all EDCs, not Penn Power singularly.

11

The doctrine of exhaustion of administrative remedies is a judicially created rule intended to prevent premature judicial intervention into the administrative process. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 684 A.2d 1047, 1053 (Pa. 1996). Our Supreme Court has explained the operation of, and exceptions to, the exhaustion doctrine as follows:

> The doctrine of exhaustion of administrative remedies is founded on judicial recognition of the mandate of the legislature that statutorily prescribed remedies are to be strictly pursued.[] It also is an acknowledgement that an unjustified failure to follow the administrative scheme undercuts the rationale upon which the administrative process is founded; that the technical nature of the subject and the ability of an administrative body to examine it suffice as a matter of public policy to displace preliminary court action . . . . Clearly our case law reinforces the rule that a party seeking relief must exhaust available administrative remedies before he may obtain judicial review . . . . However, "[w]here the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Borough of Green Tree v. Board of Property Assessments*, []328 A.2d 819, 824 ([Pa.] 1974), *quoting* L. Jaffe, Judicial Control of Administrative Action 440 (1965). Furthermore, exhaustion will not be required when the administrative process is not capable of providing the relief sought.

*Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company*, 525 A.2d 1195, 1197-98 (Pa. 1987) (citations and footnote omitted).

In *Hommrich I*, we determined that Hommrich had failed to exhaust administrative remedies because he had not submitted a project for PUC approval as a customer-generator. Unlike *Hommrich I*, Hommrich has now purchased an alternative energy project from Penn Micro, which was previously approved by the PUC for net metering. And, as we noted earlier, the PUC does not point to any

12

authority that would require Hommrich to seek another round of approval for a project simply because of a change in ownership. As noted in *Hommrich I*, an administrative agency, such as the PUC, cannot rule on the legality of its own regulations or the power to issue them. Accordingly, the PUC's preliminary objection regarding Hommrich's alleged failure to exhaust his administrative remedies is overruled.

## Conclusion

For the foregoing reasons, we overrule the PUC's preliminary objections in their entirety and direct the PUC to answer Hommrich's amended petition for review.


_____
MARY HANNAH LEAVITT, President Judge Emerita


Judge Fizzano Cannon did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David N. Hommrich,           :
            Petitioner       :
      v.                     :     No. 463 M.D. 2022
                            :
Commonwealth of Pennsylvania, :
Pennsylvania Public Utility  :
Commission,                  :
            Respondent       :

# **O R D E R**

AND NOW, this 1st day of March, 2024, the preliminary objections of the Pennsylvania Public Utility Commission to David N. Hommrich's amended petition for review are OVERRULED. The Public Utility Commission is directed to file an answer to the amended petition for review within 30 days of this order.

_____
MARY HANNAH LEAVITT, President Judge Emerita