IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Maple, : 
 : 
Petitioner : 
 : 
v. : No. 275 M.D. 2020
 : Submitted: May 12, 2026
Pennsylvania Department : 
of Corrections, : 
Respondent : 


BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
 HONORABLE MICHAEL H. WOJCIK, Judge
 HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK FILED:  June 24, 2026

Before this Court is the Application for Summary Relief (ASR)[1] filed by Petitioner Eric Maple (Inmate), *pro se*, and the Pennsylvania Department of Corrections' (DOC) answer thereto.  For the reasons that follow, we deny Inmate's ASR.

In April 2020, Inmate filed a petition for review (PFR) in this Court against DOC.  At the time the alleged events that are the subject of the instant case occurred, Inmate was an inmate at the State Correctional Institution at Houtzdale

---

[1] Inmate filed a Motion for Summary Judgment, which we treat as an ASR pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure.  "Summary relief is similar to summary judgment under the Pennsylvania Rules of Civil Procedure, in that the requested relief is only appropriate where there are no disputed issues of material fact and it is clear that the applicant is entitled to the requested relief under the law." *Marcellus Shale Coalition v. Department of Environmental Protection*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019) (citations omitted).

(SCI-Houtzdale) and confined in Level 5 Restricted Housing Unit (RHU) within the Diversionary Treatment Unit (DTU).[2] PFR, ¶1. On August 17, 2019, Inmate began refusing "institutional provided meals," engaging in a self-imposed hunger strike. PFR, ¶6. At the time of his initial meal refusals, Inmate had privileges to purchase food from the SCI-Houtzdale commissary and had food in his cell that he had previously purchased from the commissary. *Id.*, ¶¶7-9. Petitioner was transferred to the Restricted Housing Unit. *Id.*, ¶14. On August 20, 2019, Prison officials confiscated food he had purchased through the commissary and restricted his subsequent commissary purchases. *Id.*, ¶9.

As a result of his hunger strike, Inmate became subject to provisions of DOC policy that require enhanced medical attention in the form of daily consultations with medical staff. PFR, ¶¶10-11. Upon each medical visit, an inmate is charged a $5.00 co-pay from his or her inmate account. *Id.*, ¶11. Inmate was provided with these enhanced medical services on August 21, 2019, and August 22, 2019, resulting in a total deduction of $10.00 from Inmate's inmate account. *Id.*, ¶¶12, 18. Inmate allegedly "refused any medical treatment," and, on or about August 27, 2019, he "walked to the infirmary on his own without any help[,] showing he was in good health and strength" and "showed no sign of injury or illness." *Id.*, ¶¶13, 19. Further, Inmate asserted that he "never accepte[d] any treatment or signed any authorization for treatment" and that "[a]t no time was [he] being observed by medical staff on [August 21,] 2019[,] or [August 22,] 2019[,] []to determine if [he] was eating or to determine if he had eaten." *Id.*, ¶¶22-23.

Inmate contends that the DOC violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution, U.S. Const. amends.

---

[2] In a letter filed with this Court on September 16, 2025, Inmate provided an updated contact address as he is now an inmate at SCI-Fayette. Letter, 09/16/2025.

VIII, XIV. PFR, ¶28. Specifically, Inmate claimed a violation of his constitutional rights under the Eighth Amendment because the confiscation of food purchased through the commissary and his subsequent restriction on buying food through the commissary while he was engaged in a self-imposed hunger strike was cruel and unusual punishment. *Id.* Inmate further claimed that he was denied due process, in violation of his constitutional rights under the Fourteenth Amendment, when money, in the form of two medical copays totaling $10, was deducted from his inmate account for medical care associated with his hunger strike in violation of 37 Pa. Code §93.12 (describing the Prison Medical Services Program) because he was not ill or injured. *Id.*, ¶26. Inmate petitioned this Court for review requesting injunctive and declaratory relief.

In response, DOC filed Preliminary Objections (POs) in the nature of demurrers to both claims. By memorandum opinion and order dated August 11, 2021, we sustained DOC's PO related to Inmate's Fourteenth Amendment claim but overruled the PO related to the Eighth Amendment claim. *Maple v. Pennsyvlania Department of Corrections* (Pa. Cmwlth., No. 275 M.D. 2020, filed August 11, 2021). As a result, Inmate's remaining claim was that the confiscation of food purchased through the commissary and his subsequent restriction on buying food through the commissary during his August 2019 self-imposed hunger strike violated his Eighth Amendment protections against cruel and unusual punishment.

DOC then filed an answer and new matter.[3] In the answer, DOC specifically admitted that Inmate was transferred to the RHU on August 21, 2019. Respondent's Answer, ¶9. In the new matter, DOC asserted Inmate was transferred from a normal cell to a cell in the RHU equipped with continuous camera access for

---

[3] Prior thereto, DOC filed a motion to revoke Inmate's *in forma pauperis* status, which we sustained. Inmate timely paid the filing fee as directed.

3

monitoring because of the hunger strike. Respondent's New Matter, ¶9. DOC further alleged that Inmates confined in Security Level 5 Units, like the RHU, do not have full privileges to purchase and possess commissary items. *Id*., ¶10 and Exhibit No. 2, DC-ADM 815, Section 2(A)(4)(a). DOC avers that, while housed in the RHU (and later the infirmary) for monitoring purposes, Inmate was offered institutional meals multiple times per day. *Id*., ¶11. Inmate filed an answer to the new matter. On May 9, 2025, this Court issued a rule to show cause why the action should not be dismissed for failure to prosecute, which was discharged based on Inmate's response. Inmate filed the ASR now before us, which DOC answered. Both parties filed briefs.

Inmate, who was on a self-imposed hunger strike, contends that DOC subjected him to cruel and unusual punishment by confiscating his commissary-purchased food, and restricting his ability to purchase food from the commissary while housed in the RHU. He further alleges that prison officials knew of and disregarded an excessive risk to inmate health and safety.

With regard to applications for summary relief, Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure provides that "at any time after the filing of a petition for review . . . , the [C]ourt may[,] on application[,] enter judgment if the right of the applicant . . . is clear." Pa. R.A.P. 1532(b) (emphasis added); *see Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); *Gregory v. Pennsylvania State Police*, 185 A.3d 1202, 1205 (Pa. Cmwlth. 2018). "When ruling on an application for summary relief, we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." *Gregory*,

4

185 A.3d at 1202 (internal quotation and citation omitted). Guided by this standard, we examine Inmate's Eighth Amendment claim.

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and reasonable measures to ensure inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Page v. Rogers*, 324 A.3d 661, 683 (Pa. Cmwlth. 2024). To prevail on a prison-conditions claim under the Eighth Amendment, an inmate must satisfy both objective and subjective requirements. *Farmer*, 511 U.S. at 834; *Page*, 324 A.3d at 683; *Thomas v. Corbett*, 90 A.3d 789, 797 (Pa. Cmwlth. 2014).

Objectively, "an inmate must demonstrate that the deprivation he alleges is sufficiently serious and that the correctional institution has deprived him of minimal civilized measure of life's necessities" or exposes the inmate to a substantial risk of serious harm. *Thomas*, 90 A.3d at 797 (citation and quotation omitted); *accord Farmer*, 511 U.S. at 834. "[A] substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Page*, 324 A.3d at 683 (citation and quotation omitted).

Subjectively, an inmate must show "deliberate indifference," which is "a state of mind akin to criminal recklessness." *Page*, 324 A.3d at 683-84; *Tindell v. Department of Corrections*, 87 A.3d 1029, 1039 (Pa. Cmwlth. 2014). This requires demonstrating that the prison official knew of and disregarded an excessive risk to inmate health or safety and that the official was aware of facts permitting the inference of a substantial risk and actually drew that inference. *Page*, 324 A.3d at 683-84; *Tindell*, 87 A.3d at 1039.

Although incarceration imposes limitations on constitutional rights, it does not divest inmates of all constitutional protections. *Jones v. N.C. Prisoners'*

*Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 228 (2001); *Page*, 324 A.3d at 680; *Nunez v. Blough*, 283 A.3d 413, 423 (Pa. Cmwlth. 2022). Inmates may challenge conditions that fail to meet these standards. *Page*, 324 A.3d at 680. An inmate need not allege that he has actually been harmed as the Eighth Amendment protects against future harm. *Id.* at 684.

Applying these principles here, Inmate cannot establish an Eighth Amendment violation for multiple reasons. Although the deprivation of food--an essential life necessity--can, in certain circumstances, support such a claim, this is not such a case. Inmate's claim rests solely on the confiscation of commissary food items and the restriction of commissary purchases during his placement in the RHU. Inmate was deprived only of commissary items, not of food altogether. Respondent's Answer and New Matter, ¶11; *see* Petitioner's Answer to New Matter; PFR, ¶¶6, 27-29.

Inmate voluntarily commenced a hunger strike when he began refusing institutional meals on August 17, 2019. Respondent's New Matter, ¶1; *see* Petitioner's Answer to New Matter; PFR, ¶¶6, 29. Under Section 8(E) of DOC Policy 13.1.1, an inmate on a hunger strike receives enhanced medical monitoring and may be transferred to another housing unit, such as the RHU, to permit increased observation. Respondent's New Matter, ¶¶ 2-9 and Exhibit No. 1; *see* Petitioner's Answer to New Matter. Consistent with this policy, Inmate was housed in the RHU, and later in the infirmary, for closer monitoring during his hunger strike. Respondent's New Matter, ¶¶7-9; *see* Petitioner's Answer to New Matter; PFR, ¶14.

The parties dispute whether inmates housed in the RHU may purchase or possess food from the commissary. DOC asserts that, pursuant to Section 2(A)(4)(a) of Policy DC-ADM 815, inmates confined in Security Level 5 Housing

6

Units, including the RHU, "do not have full privileges to purchase and possess commissary items." Respondent's New Matter, ¶10; *see id.*, Exhibit No. 2. Inmate denies this allegation. Petitioner's Answer to New Matter, ¶¶10-11. This dispute alone creates a genuine issue of material fact and, viewed in the light most favorable to DOC as the non-moving party, precludes summary relief. *See Gregory*, 185 A.3d at 1205. Further, DC-ADM 815 is silent regarding the confiscation of already-purchased food items, which also weighs against finding that Inmate's right to relief is clear as a matter of law.[4]

Even assuming, *arguendo*, that commissary food could not be confiscated under DOC policy, Inmate still fails to show a clear right to summary relief. Inmate does not dispute that institutional meals were offered to him multiple times per day. Respondent's New Matter, ¶10; *see* Petitioner's Answer to New Matter. Inmate refused the meals based solely on his self-imposed hunger strike. *See* PFR, ¶¶6, 8, 29. Because meals were regularly offered and Inmate was under continuous medical supervision, the restriction of commissary food during RHU placement does not constitute a denial of "the minimal civilized measure of life's necessities," nor does it amount to a "sufficiently serious" deprivation to satisfy the objective requirement. Likewise, the provision of food and medical monitoring

---

[4] Section 2(A)(4)(a) of Policy DC-ADM 815 merely provides:

> The *privilege of purchasing* items under this policy is modified for inmates in Security Level 5 (SL-5) Housing Units in accordance with Department policy DC-ADM 801, "Inmate Discipline," DC-ADM 802, "Administrative Custody Procedures," 6.5.1, "Administration of Security Level 5 Housing Units," and 13.8.1, "Access to Mental Health Care," Sections 10, 12, and 14.

Respondent's New Matter, Exhibit No. 2 (emphasis added).

7

affirmatively contradicts any allegation of deliberate indifference on the part of DOC officials to Inmate's health or well-being during his self-imposed hunger strike, and therefore Inmate fails to satisfy the subjective prong of the Eighth Amendment.

Accordingly, Inmate's ASR is denied.[5]

_____
MICHAEL H. WOJCIK, Judge

_____

[5] Although DOC, in its brief, asserts that it is entitled to judgment as a matter of law, it did not seek summary relief.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Maple,                     :
                                    :
             Petitioner    :
                                    :
          v.                  : No. 275 M.D. 2020
                                    :

Pennsylvania Department    :
of Corrections,               :
             Respondent :

O R D E R

AND NOW, this 24th day of June, 2026, Petitioner's Application for Summary Relief, filed on October 17, 2025, is DENIED.

_____
MICHAEL H. WOJCIK, Judge